

April 29, 2016

**VIA E-FILING**
The Honorable Richard G. Andrews
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801-3555

        Re:    <u>*TQ Delta, LLC, et al.*, C.A. No. 15-cv-611-16-RGA-MPT</u>

Dear Judge Andrews:

      TQ Delta writes to respond to the letter submitted by the Defendants on April 28, 2016 ("Defendants' Letter").

      *Interrogatories 1 and 2*. As an initial matter, Interrogatories 1 and 2 on their face are contention interrogatories—a final answer to which is premature at this early stage of the case. *See, e.g., B. Braun Med., Inc. v. Abbott Labs.*, 155 F.R.D. 525, 527 (E.D. Pa. 1994) ("Contention interrogatories ask a party: to state what it contends; to state whether it makes a specified contention; to state all the facts upon which it bases a contention; to take a position, and explain or defend that position, with respect to how the law applies to facts; or to state the legal or theoretical basis for a contention."). The Federal Circuit has recognized that "[a]nswers to such [contention] interrogatories are often postponed until the close of discovery, . . . or are amended as a matter of course during the discovery period." *O2 Micro Int'l, Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365 (Fed. Cir. 2006).

      Further, Defendants do not assert that TQ Delta is refusing to answer or diligently supplement these interrogatories based on information presently known to it—which it has already done. Indeed, TQ Delta has answered Interrogatory No. 2 (priority dates) for every asserted claim of all eight patents-in-suit. (*See* Ex. A at 13-15.) Defendants object to the "no later than" language as being improper, but cite no authority supporting the same.

      Defendants' main quarrel is that TQ Delta must somehow extract information from two third party inventors who serve as consultants to TQ Delta. Defendants' request is, of course, surprising because they themselves have refused to request Rule 4(b) core technical documents from their third-party suppliers from whom they have a right to demand such information. *See* TQ Delta's Opening Letter brief dated April 28, 2016. Defendants have therefore taken glaringly inconsistent positions on the parties' obligations to request information from third parties. If Defendants have no obligation to produce core technical information from its suppliers—which they have the right to do—then TQ Delta certainly has no obligation to extract conception information from third party inventors.

      Notwithstanding Defendants' inexplicably inconsistent positions, their assertions here fail for at least two reasons. First, Defendants have not shown that answering such interrogatories and providing relevant documents is within the scope of the inventors' consulting agreements. Defendants simply proclaim "as these named inventors are acting as agents of TQ Delta, the responsive information they have is within TQ Delta's control under Rule 34 …." (Ltr. at 2.) Second, and more importantly, TQ Delta did in fact include in its interrogatory responses the present knowledge and information in the possession of Michael and Marcos Tzannes. The issue is therefore moot.

PHONE: (302) 777-0300 • FAX: (302) 777-0301 • WWW.FARNANLAW.COM

*Interrogatories 4 and 5*.  With respect to the Interrogatory No. 5 concerning license agreements, TQ Delta has sought consent from third parties—just as it did and procured in the DSL cases.  These requests implicate consent from numerous third parties.  TQ Delta has followed up on its requests as recently as April 26, 2016.  At this time, the Defendants' motion is premature.  Notably, Defendants themselves have yet to produce responsive license agreements and have no basis to expedite production here, particularly where consent of third parties is required and is being pursued.  Moreover, the matter of access to third party license agreements by in-house counsel of competitors under the protective order—a provision on which Defendants insisted—is just now being resolved.

With respect to the Interrogatory No. 4, Defendants make a new, one sentence argument that an interest in TQ Delta (or a related entity) or an interest in the litigations is relevant to "witness credibility." (Ltr. at 2.)  But, Interrogatory No. 4 is overbroad and seeks irrelevant information –and it is not even tied to Fed. R. Civ. P. 26(a) witnesses.  No issue in these cases involves the identity of corporate shareholders, for example.  Defendants' motion should be denied.  *See, e.g.*, Ex. J (*Blast Motion, Inc., v. Zepp Labs, Inc.*, 3:15-cv-00700-JLS-NLS (S.D. Ca. Dec. 2, 2015) ("The Court agrees with Zepp that Blast Motion's desire to learn who has a financial interest in this litigation is not relevant to the case ...."));  *cf.* Ex. K (*Precision Concrete Cutting, Inc. v. Concrete Sidewalk Solutions*, 2010 U.S. Dist. LEXIS 39152 (D. Colo. March 24, 2010) ("If Defendant's interpretation of the basis for Plaintiff's damages expert's opinion is correct, then information regarding the royalty *amounts* negotiated between Plaintiff and willing franchisees is relevant to the litigation. However, it is difficult to see how the names and addresses of such 'willing franchisees' would be relevant under any circumstances.")).  And naming those individuals will accomplish no purpose except to possibly allow the Defendants to depose them, a frolic and detour that would serve no purpose.

*MoCA and ITU Documents.*  In connection with MoCA and ITU, the final issue Defendants raise is "discovery of TQ Delta's activities relating to two standards bodies."[1]  Defendants have stated their intent to try to paint TQ Delta as a "patent troll." Defendants' Letter reflects their continued assertions that TQ Delta's "sole" activity is to "draft claims . . . at two standards . . . ." (Defendants' Letter at 3.)  If Defendants are allowed to pursue this tactic at trial, TQ Delta may respond with evidence showing its participation in the ITU relating to technological advancements, inventions, innovations and improvements provided to the ITU. TQ Delta is a valued contributor to technologies adopted by the ITU.  TQ Delta's involvement in the ITU, however, is not itself relevant to these cases involving the MoCA standard (other than perhaps MoCA's adoption of the ITU technologies, without compensation to relevant patent holders).  While TQ Delta's response to Defendants' tactics is appropriate, it in no way makes relevant every ITU submission, let alone all "emails, drafts, or internal communications" of TQ Delta on this topic.  (Defendants' Letter at 3.)  Defendants would turn the notion of

---

[1] Defendants' "background" of this issue is inaccurate, unsupported, and, in any event, irrelevant. TQ Delta is not an NPE and its primary or sole activity is not drafting new claims targeted at two standards bodies.  Rather, TQ Delta is involved in ongoing inventive work that is contributed to the ITU-T DSL standards, as Defendants acknowledge.  (*See* paragraph bridging pages 1 and 2 of Defendants' April 28, 2016 Letter.)  It is unclear what the "three patent portfolios" are that are referenced by Defendants.  In any event, the nature of TQ Delta's business is entirely irrelevant to any claim or defense in the case.

proportionality on its head—trying to convert a rational response to allegations of a "patent troll" into an obligation to turn over every scrap of paper submitted to the ITU, a standard that is not at issue here.[2] And for what purpose? Defendants' interrogatory is grossly overbroad and not relevant to any issue in this case. It is also unduly burdensome, as it would impose an enormous burden to scour all communications and even draft presentations to the ITU for no valid purpose.

Regarding the MoCA standards body, Defendants assert that "any work that TQ Delta performed relating to MoCA is relevant to this case." But this bald assertion is unsupported by reason or fact. As an initial matter, the MoCA standards body is a closed group – its meetings and internal communications are only open to MoCA members. TQ Delta is not a MoCA member and, thus, has no ability to monitor MoCA development or participate in the MoCA standards body as Defendants had alleged. Instead, TQ Delta participated in the ITU-T DSL standards body, contributing many inventions to its development efforts, and the MoCA group adopted TQ Delta's inventions for use in the MoCA standard without TQ Delta's knowledge or permission. After TQ Delta pointed this out to the Defendants, they nevertheless insisted that TQ Delta must be writing patent claims to cover the standard. While Defendants have no basis for asserting that this happened,[3] even if it had, Defendants have not explained why it would be relevant to any claim or defense. And to the extent any such claim drafting activities have occurred, they would undoubtedly be privileged and/or work product. Nevertheless, TQ Delta already confirmed to the Defendants that to the extent any pre-suit documents relating to drafting claims on the MoCA standard exist and they are non-privileged and non-immune, they would be produced.

*Failure to Meet and Confer*. The parties met and conferred regarding TQ Delta's initial interrogatory responses, which were served before the asserted claims had been identified. After service of the supplemental interrogatory responses, Defendants never identified any alleged deficiencies in the responses, and never met and conferred regarding the supplemental responses, despite TQ Delta's request that Defendants specify any alleged deficiencies, and TQ Delta's willingness to meet and confer. (*See* Ex. O.) Defendants' request for unspecified relief should be denied for this reason alone, as well as the reasons detailed above. The only dispute that has possibly reached an impasse is the parties' dispute over identity of the owners of TQ Delta, for which Defendants' requested discovery should be denied for the reasons discussed above.

*Conclusion*. Defendants' request for unspecified discovery relief should be denied in its entirety.

---

[2] Assuming, of course, that the Court allows the Defendants to use this type of language ("patent troll") at trial, which seems contrary to the Court's previous rulings.

[3] For example, for many of the patents, Defendants allege an impossibility. The '369 patent in suit issued before the first version of the MoCA standard was even written. The '430, '412, '956, and '404 patents in suit, which have only been asserted against the MoCA 2.0 standard, issued before TQ Delta first obtained a copy of this standard. And all of the patents in suit have a priority filing date that is well prior to issuance of the first version of the MoCA standard.

            Respectfully submitted,

            /s/ Michael J. Farnan

            Michael J. Farnan

cc: Counsel of Record (via E-Filing)