# Morris, Nichols, Arsht & Tunnell llp

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

Original Filing Date:  April 28, 2016
Redacted Filing Date:  May 9, 2016
REDACTED -- PUBLIC VERSION

The Honorable Richard G. Andrews
U.S. District Court for the District of Delaware
844 North King Street
Wilmington, DE 19801

Re:    *TQ Delta, LLC v. Comcast Cable Communications LLC, et al.*,
       C.A. Nos. 15-611; 15-612; 15-613; 15-614; 15-615; 15-616 (RGA)

Dear Judge Andrews:

Pursuant to the Court's Order (D.I. 51), Defendants respectfully submit the following discovery issues for resolution at the hearing scheduled for 11:00 a.m. on May 2, 2016.

*Common Interrogatories Nos. 1 and 2*.  Interrogatory No. 1 seeks information about conception and reduction to practice of the asserted patents, including dates of alleged conception and reduction to practice. (Ex. A at 6.)  Interrogatory No. 2 seeks related information about TQ Delta's contentions concerning the earliest priority date for the asserted patents. (*Id.* at 10.)  In its responses, TQ Delta refuses to provide specific dates that it alleges for conception, reduction to practice, and priority.  Instead, for Interrogatory No. 1, TQ Delta alleges that each patent was conceived and reduced to practice "at least before," "on or before," or "no later than" specific dates. (*Id.* at 7-10.)  For Interrogatory No. 2, TQ Delta similarly alleges priority dates "no later than" specific dates. (*Id.* at 13-15.)

TQ Delta's "at least before," "on or before," and "no later than" responses are insufficient because Defendants need to know the specific dates, or at the very least the *earliest* dates, TQ Delta asserts for conception, reduction to practice, and priority to determine what may constitute prior art. *See Alexsam v. The Gap, Inc.,* 621 Fed. App'x. 983 (Fed. Cir. 2015) (finding patent invalid where patentee failed to establish conception and reduction to practice before date of prior art).  By alleging dates for conception, reduction to practice, and priority that are not specific and do not provide an earliest alleged date, TQ Delta's responses do not enable Defendants to determine what may or may not be prior art under TQ Delta's contentions.

TQ Delta also does not provide details sought in Interrogatory No. 1 concerning the alleged conception and reduction to practice of the asserted patents, alleging that it "does not presently have knowledge of the facts concerning the conception and actual reduction to practice," apparently because it acquired the asserted patents from Aware, Inc. ("Aware"). (Ex. A at 7.)  However, TQ Delta's claim that it has no such information in its possession, custody, or control is contradicted by its own representations to this Court.  For example, on October 30, 2014, TQ Delta represented that after it acquired the asserted patents from Aware, two named inventors of the patents, Michael Tzannes and Marcos Tzannes, "traveled with the patent portfolio [to] TQ Delta … [as] consultants and representatives of TQ Delta in their ongoing inventive work." (Ex. B at 7:7-20.)  TQ Delta also represented that these individuals "continue to develop DSL technology" and "contribute those technologies to [a standards body]" on a

The Honorable Richard G. Andrews
April 28, 2016
Page 2

monthly or bi-monthly basis "on behalf of TQ Delta." (*Id.* at 7:17-8:12.) On October 20, 2015, TQ Delta again indicated that these two inventors are "affiliated with TQ Delta." (Ex. C at 20:15-19.) TQ Delta's Initial Disclosures also indicate that these individuals have information concerning "the work that resulted [in the asserted patents]" and should only be contacted through TQ Delta's counsel. (Ex. D at 2.) Thus, as these named inventors are acting as agents of TQ Delta, the responsive information they have is within TQ Delta's control under Rule 34, and must be provided by way of supplementation of TQ Delta's discovery responses.

*Common Interrogatories Nos. 4 and 5.* Interrogatory No. 4 seeks information about persons and/or companies with an interest in the TQ Delta patents including, through a license or an investment interest in TQ Delta or the litigations, as well as details concerning such interests. (Ex. A at 16.) Interrogatory No. 5 seeks information about agreements concerning the TQ Delta patents. (*Id.* at 20.) TQ Delta refuses to provide: (1) details of licenses to the TQ Delta patents (or produce the licenses); and (2) the identity and details of any interests in TQ Delta or the litigations. (*See id.* at 16-21.)

TQ Delta has not produced any licenses to the asserted patents or provided the requested details about the licenses, claiming that the licenses are subject to a confidentiality obligation to Aware, the prior owner of the patents. (*Id.* at 17.)



(Ex. E at § 5.1(c).) TQ Delta alleges that it has sought Aware's permission to produce the licenses but has not yet heard back. But, this dispute has been ongoing for months. Indeed, during the parties Rule 16 discussions, Defendants indicated that they wanted licenses produced early in the case. Defendants also served their interrogatories and requests for production seeking this information nearly five months ago. Further, TQ Delta has represented that *these licenses were produced months ago in the collateral DSL cases.* Any alleged third-party confidentiality concerns can be addressed by designating the materials under the protective order to be entered in these cases, or alternatively, under D. Del. L.R. 26.2 until such order is entered. TQ Delta should be required to produce the licenses to the asserted patents and provide the information concerning the licenses sought in Interrogatory Nos. 4 and 5.

TQ Delta should also be required to provide the identity and details of any interests in the TQ Delta Patents through an interest in TQ Delta (or a related entity) or an interest in the litigations, as these topics are relevant to witness credibility. *See U.S. v. Patterson*, 68 Fed. App'x. 351, 354 (3rd Cir. 2003) (noting "proof of bias is virtually always relevant"). Also, to the extent out of court resolutions may ever be reached, Defendants need to know who they are in fact paying in order to license the patents at issue. Furthermore, another licensing entity related to TQ Delta, TQ Beta, LLC, was recently ordered to produce this very type of information in this

The Honorable Richard G. Andrews
April 28, 2016
Page 3

District.  (Ex. F at 20:7-21, 22:2-6, 27:24-28:10, 29:4-31:6.)

*MoCA and ITU documents.*  Defendants seek discovery of TQ Delta's activities relating to two standards-setting bodies.  (Ex. G, H, I[1].)  By way of background, TQ Delta is a non-practicing entity whose only assets appear to be three patent portfolios originally filed in the 1998 to 2000 time frame.  Since it was formed, TQ Delta's primary, if not sole, activity has been to draft new claims in those three portfolios targeted at two standards and encourage members of those bodies to adopt technology relating to TQ Delta's patents.

The first body is the Multimedia over Coax Alliance ("MoCA").  This is a MoCA case, as TQ Delta's infringement contentions *only* point to MoCA standards, and cite nothing unique to Defendants' individual products.  (Ex. J.)  Thus, any work that TQ Delta performed relating to MoCA is relevant to this case, given that its only interest in MoCA was generating benefit for what became this lawsuit.  TQ Delta responds that it need not produce MoCA documents because it is not a MoCA member, and agreed to produce only material "relating to drafting claims to cover the MoCA standards." (Ex. K.)  Whether TQ Delta is a member of MoCA is irrelevant, as TQ Delta clearly has an interest in MoCA and it should be ordered to produce all of the other documents concerning its MoCA activities.  *See* Fed. R. Civ. P. 26(b)(1).  Further, TQ Delta will not reveal what it is holding back. (Ex. K.)  This is improper.

The second body is the Telecommunication Standardization Sector of the International Telecommunications Union ("ITU-T").  The specifications of the asserted patents only address the DSL standard, not MoCA.  TQ Delta has also asserted some of these patents in a collateral case against DSL technology, and the ITU-T prepares the DSL standards.  TQ Delta does not dispute that the ITU-T is relevant, having alleged that its participation in the ITU shows its work in "technological advancements, inventions, innovations and improvements" (Ex. L at 13:24-14:6), and that "in order to rebut the assertion it's a non-practicing entity, TQ Delta intends to introduce some of that evidence" (*id.* at 15:2-7).  TQ Delta, however, appears to be attempting to cherry pick only the "innovation" evidence that puts it in a good light—such as its technical proposals to the ITU—but withhold the remaining material.  (Ex. K); *see* Fed. R. Civ. P. 26(b)(1); *see also Helios Software, LLC v. SpectorSoft Corp.*, C.A. No. 12-081, 2015 WL 3561367, at *8 n.4 (D. Del. June 5, 2015) ("The integrity of the [discovery] process depends on lawyers to perform the duty of disclosure imposed by the rules to ensure that all discoverable information—whether favorable or unfavorable to that lawyer's client—is provided to the opposing party.").  As with the MoCA documents, TQ Delta will not reveal what it is holding back.  (Ex. K.)  Indeed, TQ Delta admits to participating in the ITU-T and, in doing so, must have generated at least some emails, drafts, or internal communication, especially given that this activity is central to TQ Delta's business model.  TQ Delta should not be permitted to restrict the scope of relevance to its own subjective view of the facts or its own theory of the case.  Defendants request that TQ Delta be required to produce all documents concerning its activities with MoCA and the ITU-T.

---

[1] Comcast, Cox, Time Warner Cable, and Verizon's relevant RFPs are identical; Comcast's requests are used in Exhibit I.

The Honorable Richard G. Andrews
April 28, 2016
Page 4

Respectfully,

*/s/ Jennifer Ying*

Jennifer Ying (#5550)

cc:    Clerk of Court (by hand)
        All Counsel of Record (by e-mail)