# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE  19899-1347

The Honorable Richard G. Andrews
U.S. District Court for the District of Delaware
844 North King Street
Wilmington, DE 19801

Original Filing Date:  April 29, 2016
Redacted Filing Date:  May 9, 2016
REDACTED -- PUBLIC VERSION

Re:   *TQ Delta, LLC v. Comcast Cable Communications LLC, et al.*,
C.A. Nos. 15-611; 15-612; 15-613; 15-614; 15-615; 15-616 (RGA)

Dear Judge Andrews:

Defendants respectfully respond to TQ Delta's ("TQD") letter dated yesterday.

## **PRODUCTION OF "CORE TECHNICAL DOCUMENTS"**

TQD suggests that Rule 4(b) is coextensive with the scope of discovery, and perhaps broader—as if the Rule 4(b) discovery on a patent for car wheels would require full discovery on every aspect of the engine and wipers.  This is not the standard.  Rule 4(b) addresses "core technical documents related to the accused product(s), including but not limited to operation manuals, product literature, schematics, and specifications."  TQD ignores two of three key words –"***core***" and "***technical***."  Thus, in *EON Corp. IP Holdings, LLC v. FLO TV Inc.*, this Court granted "Plaintiff's motion to compel the production of documents related to the operating systems *to the extent that they relate to the operation and functionality of the accused applications which used the Sprint operating systems*."  10-812-RGA, 2013 WL 5882005, at *4 (D. Del. Jul. 18, 2013) (emphasis added), *adopted sub nom. EON Corp. IP Holdings LLC v. FLO TV Inc.*, 10-812-RGA, 2013 WL 5883759 (D. Del. Oct. 30, 2013).  Rule 4(b) is satisfied when a defendant "has identified those areas where relevant documents may have been created or generated" and "is willing to continue to augment its discovery responses" by conducting updated searches in areas that might have additional relevant documents, as otherwise "the burden of production on Defendant outweighs its likely benefit to" Plaintiff.  *Wyeth v. Impax Labs., Inc.*, 248 F.R.D. 169, 172 (D. Del. 2006).

The three cases cited by TQD are inapposite.  *Cryptography Research, Inc. v. Visa Intern. Service Ass'n*, addresses production under "Judge Ware's order and Patent L.R. 3-4," not this Court's Rule 4(b).  2005 WL 1787421, *2-3 (N.D. Cal. Jul. 27, 2005).  Further, the non-movant was only required to produce "information … relating to any aspect or element of the claims identified by CRI in its [infringement contentions]."  In *Integrated Circuit Sys., Inc. v. Realtek Semiconductor Co.*, the Court denied a motion for additional disclosure as outside the scope of infringement contentions.  308 F. Supp. 2d. 1106 (N.D. Cal. 2004).  TQD's only Delaware case, *Delaware Display Group LLC v. LG Electronics Inc.*, C.A. No. 13-2109-RGA, D.I. 83, Tr. at 22 (D. Del. Aug. 17, 2015), involved production of supply agreements those defendants had agreed to produce.  *See* Ex. 1.

*All defendants*.  None of the Defendants make the accused products or the chips used therein.  Rather, Defendants provide services that use the products—*e.g.*, cable and satellite TV.  Despite infringement allegations directed entirely to three low-level features, TQD chose not to sue—and refuses to subpoena—any of the makers of the accused devices or chips that implement

the accused features. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Regardless, all Defendants satisfied their Rule 4(b) obligations and agreed to produce any additional technical documents relating to allegedly infringing features that may be identified in discovery.  Each Defendant has been willing to work with TQD to try to find additional documents.  At bottom, TQ Delta's motion is not based on a disagreement about what documents should be produced or actual evidence that documents are not being produced, but unsupported speculation that Defendants must have more than they say.

Turning to the individual Defendants, **DIRECTV** confirmed satisfying Rule 4(b) and agreed to make their code available. Exs. 2, 3.  DIRECTV also asked TQ Delta what documents they thought missing, asking if TQ Delta's demands were now unrelated to the technical issues in the case, as defined by TQ Delta's own infringement contentions.  Ex. 2.  TQD tries to turn this effort on its head, arguing that this was an attempt to limit discovery, when the exact opposite is true.  **Comcast** has repeatedly agreed to search for additional technical documents TQD thought were missing, and agreed to produce anything identified.  TQD has no requests outstanding to Comcast to search for more documents.  The two Comcast documents TQ Delta cites do not indicate Comcast is refusing to produce anything.  TQD's letter does not mention **Cox** by name, indicate what documents it failed to produce, or cite any documents in support of its claim.  TQD's letter does not say what documents **TWC** failed to produce, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ of document).  TQD's letter cites ▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Verizon agreed to search for and produce the documents if located.  Verizon believes it has located these documents and will promptly produce any documents identified.  Verizon is not aware of similar submissions for other accused products.  TQD selects ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  C.A. No. 15-611, D.I. 55 at 2, Ex. G.  This is incorrect.

## PRODUCTION OF THIRD PARTY DOCUMENTS

TQD seeks production of documents *not* in Defendants' possession, but in the possession of unnamed, independent, third-parties.  But this District has repeatedly held that a party does not control a non-party's documents for discovery unless there is a "legal right" to obtain them.  *See Inline Connect. Corp. v. AOL*, 02-272-MPT, 2006 WL 2864586, at *3 (D. Del. Oct. 5 2006) ("[T]he mere fact that [a party] may be able to obtain the information if it had a business or other reason to do so is irrelevant to the issue of control. Rather, the pertinent issue is whether [the party] ha[s] the legal *right* to obtain the information at issue."); *Novartis Pharm. v. Eon Labs*, 206 F.R.D. 392, 395 (D. Del. 2002).  For arms-length businesses, a party has such a legal right when "the respective business operations of each entity 'are so intertwined as to render meaningless their separate corporate identities.'"  *Id.*; *Inline*, 2006 WL 2864586, at *4 (same).  This is true even when an agreement grants access to and use of such information. *Id.* ("[A] contract provision which merely authorizes the party litigant's access to information that is in the possession of a non-party, without more, is insufficient to establish legal control in the Third

Circuit."); *Novartis*, 206 F.R.D. at 395. Thus, "in cases in which the corporate entities are not parent and subsidiary, production is rarely ordered." *Id.*

TQD does not address *Novartis*. TQD's sole argument for why *Inline* is not relevant is the Court allegedly found the party did not possess control of the non-party's information "'because there [was] no evidence [of] a contractual provision'" giving the party "a right to demand these documents during the normal course of business." The quoted language, however, is dicta, and in context only says that the absence of a contract was "irrelevant . . .because there is no evidence that such a contractual provision exists." *Inline*, 2006 WL 2864586, at *3. Further, *Inline* later clarifies that, consistent with the holding in *Novartis,* even such a contract, "without more, is insufficient to establish legal control in the Third Circuit." *Id.* at *4; *see also* *Novartis*, 206 F.R.D. at 395.

TQD's remaining cases are inapplicable. As this District has recognized, *Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 142 (3d Cir. 2004), "examined a party's control over documents specifically in the context of the principal-agent relationship . . . [not] production as between two independent corporations who conduct business at arms-length . . . ." *Inline*, 2006 WL 2864586, at *1. Next, *Barton V. RCI, LLC*, 10-3657, 2013 WL 1338235, at *19 (D.N.J. Apr. 1, 2013), is an unpublished New Jersey decision also based on a finding of agency. *Id.* ("Defendant may be compelled to obtain the requested information because [the non-party] is Defendant's agent."); *see also Grayson v. Gen. Elec. Co.*, 13-1799, 2016 WL 1275027, at *2 (D. Conn. Apr. 1, 2016) (distinguishing *Barton*). *Cryptography*, 2005 WL 1787421, was not based on Third Circuit law and is designated "NOT FOR CITATION" under N.D. Cal. Civ. L.R. 7-14, which prohibits its citation as precedent even in that court. N.D. Cal. L.R. 3-4(e). Finally, in *Delaware Display,* it is not clear that the point was even disputed.

TQD does not cite anything establishing Defendants have a legal right to require their suppliers (or makers of chips they used) to provide relevant documents as required in this District for control.



All of this evidence is far from establishing that Defendants and their suppliers are "so intertwined as to render meaningless their separate corporate identities," and TQD's request should thus be rejected. *Novartis*, 206 F.R.D. at 395; *Inline*, 2006 WL 2864586, at *4.

The Honorable Richard G. Andrews
Page 4

                                                Respectfully,

                                                */s/ Jennifer Ying*

                                                Jennifer Ying (#5550)

cc:    Clerk of Court (by hand)
        All Counsel of Record (by e-mail)