**FARNAN** LLP

April 28, 2016

VIA E-FILE
The Honorable Richard G. Andrews
844 North King Street, Unit 9, Room 6325
Wilmington, DE 19801

**FILED UNDER SEAL**

Re: *TQ Delta LLC, et al.*, C.A. Nos. 15-cv-611-16-RGA-MPT

Dear Judge Andrews:

Plaintiff TQ Delta moves the Court for an order compelling Defendants to complete their production of "core technical documents related to the <u>accused products</u>[,]"as mandated by Local Discovery Rule 4(b) as incorporated in the Court's Scheduling Orders in the respective cases (ordering production by January 29, 2016).[1] Rule 4(b) requires that "each defendant shall produce to the plaintiff the core technical documents related to the accused product(s), including but not limited to operation manuals, product literature, schematics, and specifications." As discussed below, Defendants are (i) refusing to produce core technical documents in their possession and control, and (ii) contrary to applicable case law, refusing to demand and produce relevant documents from third parties that they have a right to obtain or demand.

### I. BACKGROUND

First, DIRECTV expressly refuses to comply with the Court-ordered production of core technical documents related to the "accused <u>products</u>"—arguing that it is only required to produce documents to the extent they narrowly address the "allegedly infringing <u>features</u>." DIRECTV also improperly attempts to impose the burden on TQ Delta to demonstrate the need for these core technical documents.

Second, all Defendants appear to have in their possession core technical documents that are "related to the accused products" that they have not produced. By way of example only, Defendants have failed to produce product certifications to the MoCA standard, bills of material, schematics, data sheets/product specifications, and product requirement documents ("PRDs") and responses thereto.

Finally, all Defendants refuse to demand relevant core technical documents from third-party suppliers, notwithstanding <u>that they have a legal right to do so and that the suppliers are obligated to comply with such demands</u>.

### II. REFUSAL TO PRODUCE CORE TECHNICAL "PRODUCT" DOCUMENTS

Although each of the Defendants has impliedly attempted to narrow the scope of Rule 4(b), DIRECTV brazenly attempts to narrow the scope of its 4(b) production to only documents concerning the allegedly infringing "features." *See* Ex. B. Worse yet, DIRECTV nominates itself as the sole arbiter of what these "allegedly infringing features" are and what documents it will produce. In effect, DIRECTV redefines what Rule 4(b) and the Scheduling Order require and then announces that it has no additional documents. This is improper. *See Cryptography Research, Inc. v. Visa Intern. Service Ass'n*, 2005 WL 1787421, at *3 (N. D. Cal. July 27, 2005) (rejecting defendant's narrow interpretation of local patent rules and ordering defendant to supplement deficient core technical production).

Separately, DIRECTV argues that TQ Delta must demonstrate the need for additional

---

[1] The attached Proposed Order tracks the language of the Order that was entered by this Court in *Delaware Display Group LLC v. LG Electronics, Inc.*, C.A. No. 13-cv-2109-RGA. *See* Ex. H.

4(b) core technical documents.[2] *See* Ex. C. (asking TQ Delta "to identify anything about your infringement contentions that is lacking by virtue of the purportedly missing documents."). This tactic undercuts the policy reasons for enacting local discovery rules. Local discovery rules "are not like other forms of discovery which require a formal request by the opposing party. Rather, it is the responsibility of the party itself to make disclosures that satisfy the Rules." *Id.* at *3 (rejecting argument that local rules only require documents specifically requested by plaintiff). Local patent rules are adopted and ordered "to place the parties on an orderly pretrial track" and to prevent "eleventh hour 'discovery' of facts." *Integrated Circuit Sys., Inc. v. Realtek Semiconductor Co.*, 308 F. Supp. 2d 1106, 1107 (N.D. Cal. 2004).

Second, DIRECTV improperly shifts the burden to TQ Delta to demonstrate how and why DIRECTV's Rule 4(b) production is deficient and to identify what documents would cure the deficiencies. At the outset, this is quixotic because it assumes that TQ Delta somehow possesses *a priori* knowledge of all of the core technical documents in DIRECTV's possession. It also presupposes that the sole purpose of the core technical document production is to further the preparation of infringement charts. But, core technical document production serves multiple purposes, including (1) allowing the plaintiff to develop its litigation theories, and (2) identifying witnesses and third parties that may have discoverable information. By way of example, this Court has ordered defendants to even produce supply agreements as part of its 4(b) core production. *See* Ex. G (*Delaware Display Group LLC et al. v. LG Electronics Inc.*, et al., C.A. No. 13-cv-2109-RGA, D.I. 84, at p. 1 (D. Del. August 17, 2015) ("[defendant] shall produce all remaining core technical documents for the [identified] accused... including ... (c) supply agreements not previously produced related to the Accused Products.")). DIRECTV should be ordered to produce all core technical documents that relate to the accused products.

Finally, with respect to all the Defendants, it is readily apparent that Defendants have in their possession core technical documents responsive to Rule 4(b) that they have not produced. ▮▮▮▮▮ Yet, each of the Defendants has refused to produce such documents.

Additionally, publicly available information also confirms Plaintiff's understanding that Defendants are not complying with their obligations under Rule 4(b). For example, Verizon has submitted core technical documents to the FCC for several of its Accused Products, yet claims no knowledge about their existence or contents. *See* Ex F. And in several public announcements, DISH has touted the specific technical features of its Accused Products – features that could only have come from Rule 4(b) core technical documents for the Accused Products such as schematics, bills of materials and the like, but DISH like the other Defendants simply states that it has no such documents. *See* Ex. G.

### III. DEFENDANTS' RIGHT TO DEMAND DOCUMENTS FROM THIRD PARTIES

Defendants do not dispute that they have the right to demand relevant core technical documents from third parties. ▮▮▮▮▮ But, Defendants incorrectly contend they have no *obligation* to do so.

---

[2] DIRECTV flips the order of disclosures required by the Scheduling Order and Default Standard; DIRECTV's core technical document production per ¶ 4(b) is to come prior to TQ Delta's initial infringement charts, per ¶ 4(c).

As an initial matter, pursuant to Rule 4(b), this Court has ordered similarly-situated defendants to demand core technical documents from third parties, if a right to demand exists. *See* Ex. H (*Delaware Display Group LLC*, at p. 2 (ordering that "[i]f [defendant's] supply agreements give them some right to obtain specifications for [the accused products] . . . , then [defendant] is expected to exercise that right.")). In fact, this Court has ordered a party "to make good faith efforts to obtain voluntary production of [core technical] documents from the applicable third party." *Id.* And this Court is not alone in ordering a party to demand from third parties documents and things that the party has a legal right to obtain on demand. *See, e.g., Cryptography Research, Inc.*, 2005 WL 1787421, at *3 (stating that because defendant, through its contractual relationships with third parties, had "the legal right to obtain on demand the information submitted by manufacturers and vendors to the testing laboratories for the purpose of [defendant's] approval and testing," third-party information was within the control of defendant); and *Barton v. RCI, LLC*, 2013 WL 1338235, at * 6 (D.N.J. April 1, 2013) ("If the producing party has the legal right or the practical ability to obtain the documents, then it is deemed to have 'control'... even if the documents are actually in the possession of a non-party").

Additionally, it is well established in the Third Circuit, that "so long as the party has the legal right or ability to obtain the documents from another source upon demand, that party is deemed to have control." *Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 142, 160 (3d Cir. 2004) (emphasis added). It is important to distinguish the facts here from those in *TQ Delta v. Pace*. The issue here is whether Defendants are required to demand documents from third party suppliers where they have the right to do so. In contrast, the issue in *Pace* was whether the Court should order production of documents downloadable from nonparty supplier's customer-facing web-portal without permission of the nonparty. As articulated by nonparty Broadcom, the issue was whether "Rule 34 requires a party to produce nonparty documents that it does not have, just because that party might be able to obtain them from a nonparty without permission." Ex. I (3-cv-01835-RGA, D.I. 105), at p. 2 (emphasis in original). Broadcom argued that "obtain[ing] [documents] from a nonparty without permission" of the nonparty was akin to asking the party to "trespass" the nonparty's "office building that they had previously visited as guests and steal boxes of documents." *Id.* This is not the case here. TQ Delta is not asking Defendants to trespass and take documents from nonparties without permission. Instead, TQ Delta is requesting that the Court order Defendants to demand and produce documents from third parties that they have a right to obtain or demand.

Defendants have also argued that under this Court's decision in *Inline Connection Corp.*, they are not required to demand from third parties documents that they have a legal right to obtain on demand. However, *Inline Connection* is inapposite. In that case, the Court refused to order defendant AOL to demand documents from third parties because AOL did not have a right to demand these documents during the normal course of business. *See Inline Connection, Corp. v. AOL Time Warner Inc.*, No. C A 02-272-MPT, 2006 WL 2864586, at *3 (D. Del. Oct. 5, 2006) (stating that "because there is no evidence [of] a contractual provision," defendant did not possess control of the third party information). That is not the case here. Defendants have a right but they refuse to exercise that right to avoid compliance with Rule 4(b).

### IV. CONCLUSION

For the reasons set forth above, TQ Delta requests entry of the proposed order compelling defendants to produce "core technical documents related to the accused products" that they have in their possession, custody or control, including documents in the possession of third parties that Defendants have a right to demand and comply with their Rule 4(b) and the Scheduling Order.

Respectfully submitted,

/s/ Michael J. Farnan

Michael J. Farnan

Cc: Counsel of Record (vial E-Mail)