

**VIA E-FILE**
The Honorable Richard G. Andrews
844 North King Street, Unit 9, Room 6325    **FILED UNDER SEAL**
Wilmington, DE 19801

Re:    *TQ Delta LLC, et al.*, **C.A. Nos. 15-cv-611-16-RGA**

Dear Judge Andrews:

    As ordered by the Court, TQ Delta writes to inform the Court of the status of Defendants document production and other issues addressed at the May 2, 2016 discovery conference.

**Defendants have the right to demand relevant documents from their suppliers.** During the May 2, 2016 discovery conference, the Court ordered the Defendants to produce their agreements with suppliers of the accused MoCA products ("Agreements"). Following the production of the Agreements, Plaintiff identified to four of the six Defendants ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



Based on the foregoing citations to Defendants' supplier agreements, in accordance with this Courts' order in the *Delaware Display* case, this Court should order ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and produce documents from their suppliers.

**Verizon's Production of Documents Submitted to the FCC**. During the May 2nd hearing, the Court ordered Verizon to produce confidential technical documents that were submitted to the FCC for the IPC2100 and G1100 accused products. Verizon's Counsel represented to the Court that the documents in question were located and would be produced. *See* Ex. 22 (May 2, 2016 Hearing Tr.), at 21:1-6. So far Verizon has not made a complete production of documents for the G1100. Separately, Counsel represented that there were only "two products that have this FCC request." *Id.* It has now to come to light that there is a third product - the IPC3100. Verizon refuses to produce any documents for this product arguing that the IPC3100 has not been made. But this seems impossible. A product has to be made for it to be tested and submitted to the FCC for certification. An order compelling Verizon to produce these documents is required.

**TQ Delta's ITU-T Production.** At the May 2 hearing, Defendants sought production of TQ Delta's documents relating to ITU-T, asserting that such documents were indisputably relevant. The issue should have been moot because TQ Delta explained that it was not withholding responsive documents. In any event, the issue was found by the Court to be moot after Defendants dropped their request for additional information and represented to the Court that they will not make, at trial, prejudicial comments regarding the manufacturing status (or not) of TQ Delta, and TQ Delta would not need to rely on its technical submissions to the ITU-T to show that it was an innovator. But the transcript and Defendants' subsequent discovery requests indicate that TQ Delta cannot trust Defendants to avoid making such comments during trial. (See 5/2/16 Tr. at 55 ("To be very, very clear, of course, part of the damages analysis is, they don't make products. We'll say that. And the nature of companies, but we're not going to call them non-practicing entities or trolls, or implies [sic] it's bad not to make products.").)

2

Since that time, it has become clear that Defendants (1) intend to fully continue their pejorative arguments and statements implying or stating that it is bad for a company not to make products, and (2) intend to fully continue their discovery of ITU-T documents in this litigation. (See, e.g., 5/6/16 Subpoenas to Michael & Marcos Tzannes (seeking ITU-T documents); see also Ex. 23, 5/26/16 Tr. of Roche at 174:25-175:1 ("Can you name a single member of ITU-T besides you who doesn't make products?"), 175:12-16 ("Q. So . . . one of the ways you think you might make money from participating in the ITU-T is to get them to adopt your proposals and then one day claim it infringes one of your patents. Correct?"), 175:22-176:2 ("Q. And that's never crossed your mind that one day they could adopt your proposal and this would be covered by one of the Aware patents or one of the patents that you prosecuted from the Aware portfolio; that's never crossed your mind?"), 176:10-16 ("Q. Can you name something other than licensing that could stand to benefit -- and I'm saying licensing the Aware portfolio or patents derived from the Aware portfolio. Can you think of some other way of deriving benefit from your ITU-T participation that you is taken concrete steps to do to make money off of those contributions?"), 177:8-12 ("Q. Other than licensing your patents that you already have or that you're prosecuting from the Aware portfolio, how would you possibly make more money by getting the ITU-T to adopt one of your standard -- one of your proposals?"), 178:9-15 ("Q. . . . How does TQ Delta stand to make money from contributing to the ITU-T? . . . Other than increased licensing revenue related to the Aware patent portfolio?"), 179:18-13 (similar).) This tired theme has continued in correspondence from Defendants and telephone calls as well. (See, e.g., 6/2/16 e-mail from Chachkes to Wimbiscus ("TQ Delta exists as a licensing company and only has one thing to license: the IP it acquired from Aware.").)

Other examples exist. Through its newly-served third-party subpoenas, for example, Defendants apparently seek to discover all information that it purportedly gave up the right to seek in connection with purporting to moot the purported discovery dispute regarding the ITU-T. Thus, to prevent any prejudice to TQ Delta during trial, TQ Delta is left with no option but to present its contributions to the ITU-T, which will present TQ Delta in an accurate manner.

In short, Defendants' conduct has again ripened the ITU-T discovery (raised in Defendants' letter brief to the Court). As TQ Delta has explained to Defendants, TQ Delta is not withholding (and will be producing or has produced) ITU-T documents sought by Defendants in connection with the disputes raised in the April 29 letter.

Respectfully submitted,

/s/ Brian E. Farnan

Brian E. Farnan

cc: Counsel of Record (via e-mail)