

**VIA E-FILE**
The Honorable Richard G. Andrews
844 North King Street, Unit 9, Room 6325
Wilmington, DE 19801

**FILED UNDER SEAL**

Re:   *TQ Delta LLC, et al.*, C.A. Nos. 15-cv-611-16-RGA-MPT

Dear Judge Andrews:

TQ Delta submits this opening letter to (1) compel production of documents; (2) move for a protective order on improper questioning at a Rule 30(b)(6) deposition of its designee, Mr. Roche; and (3) to address matters for the supplemental order regarding ESI.

*Compel Withheld MoCA documents*. The damages issues will involve an assessment of the value and benefits of, nature of, demand for, alternatives to, and extent of use of the accused MoCA technologies by Defendants' respective customers. TQ Delta contends that asserted patents are fundamental to MoCA, so the value of patents relative to MoCA and, in turn, to the accused products, is an issue for the trier of fact. TQ Delta seeks details about, among other things, the nature and extent of use, subscriber base, actual and perceived benefits (e.g., customer retention), market research or analysis, competition/demand, alternatives to MoCA that were considered, the decision to market, and sales at the customer level. See Exhibit 1 (RFP Nos. 4-7, 10-16, 22-29, 40-41, 52-53, 58, 66-69, 75, 77-78, 82-83, 93-99). While many Defendants have not objected to such requests, (at least) DIRECTV ("DTV") has wrongly sought to limit its production to (1) "feature-specific" documents (instead of facially relevant documents pertaining to sales-drivers, product benefits, and the value of MoCA, for example) and (2) high level, aggregate sales information (instead of customer-specific sales data that is readily available in electronic "flat files"). Unless DTV finds a so-called feature referenced on a document, it summarily deems it irrelevant. But, damages issues relate to what types of product and service qualities and characteristics are in demand, drive sales, and important to customer retention, for example. And, documents may be highly relevant even if they do not expressly recite what DTV's litigation counsel deems to be a relevant feature. These matters of competition, demand, value, etc., are routinely deemed relevant by financial experts. Such documents should be produced.

[REDACTED]

. The withheld documents are plainly relevant. *See Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1119-20 (S.D.N.Y. 1970), *modified* and *aff'd*, 446 F.2d 295 (2d Cir.) (stating that one factor in the reasonable royalty analysis is the "[t]he utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.").

*Compel indemnification agreements and organizational charts*. At least DTV is wrongly withholding indemnification agreements and organizational charts. It alleges no burden to produce, and provides no justification for withholding the agreements or charts. Yet, such

agreements are relevant to damages and indirect infringement issues. *See, e.g., Asus Computer Int'l v. Round Rock Research, LLC*, No. 12-cv-02099 JST (NC), 2013 U.S. Dist. LEXIS 166493, at *3 (N.D. Cal. Nov. 20, 2013) (ordering production of indemnification agreements as relevant to damages issues). And (high-level) organizational charts regarding marketing and sales will facilitate identifying witnesses for depositions. *See* Exhibit 1 (RFP Nos. 56, 100).

*Compel DTV to produce relevant technical documents.* On April 25, 2016, DTV in its response to TQ Delta's Interrogatory No. 2,  DTV, however, refuses to produce documents responsive to TQ Delta's RFP 120 that seeks documents used by DTV to identify these components arguing that they are not relevant. *See* Exhibit 4 These documents are highly relevant to TQ Delta's claims because Moreover, these documents are per se core technical documents under section 4(b) of the Default Standard, with which DVT was ordered to comply by January 29, 2016. D.I. 15 at 4. An order compelling production of documents in response to RFP 120 is proper. *See* Exhibit 6 (RFP 120).

*Compel Production of Reference Design Kit ("RDK") documents.* Comcast objects to produce documents related to the RDK based on relevance. Comcast's position is untenable. The original equipment manufacturers ("OEM") of the accused MoCA products and the chip vendors develop and configure the accused functionality of the accused MoCA products, in part, in accordance with the RDK. *See* Exhibit 5 (collection of press releases discussing accused MoCA product XG5, MoCA 2.0 and RDK), at pp. 2 and 5. Consequently, the documents related to the RDK are relevant to TQ Delta's claims. Moreover, these documents are also properly considered core technical documents under section 4(b) of the Default Standard. An order compelling production is proper.

*ESI Order - Preamble.* In the guise of seeking entry of a modified ESI Order, Defendants propose language for the preamble that "supplements [and controls over] all other discovery rules, prior orders, and prior agreements." This would negate provisions of the Court-entered Protective Order and the parties' prior ESI and discovery agreements—and would be glaringly unfair. First, this would be an end-run around established Third Circuit law requiring a party to show good cause to modify a protective order. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d. Cir. 1994). Second, Defendants' proposal improperly seeks to supplant terms of "prior agreements." By way of example only, in exchange for TQ Delta's dismissal of an earlier complaint against certain related entities, the parties entered into a side-agreement for discovery.

*ESI Order - Number of Search Terms.* Defendants have not shown good cause to limit a requesting party to no more than five search terms. The Default ESI Order allows ten search terms. Given the size of this case –with eight patents asserted against a myriad of products (e.g., fifty products deployed by Defendant Verizon)—a limit of fifteen search terms is reasonable and appropriate.

*Motion for Protective Order.* TQ Delta moves for a protective order regarding questioning at a recent 30(b)(6) deposition of TQ Delta concerning "license negotiations." First,

Defendants sought discovery of privileged licensing negotiations. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Second, "negotiations" were not even included as a topic in the deposition notice. Third, courts have imposed heightened standards for discovery of licensing and settlement negotiations in view of the policy interest of enabling frank settlement discussions. *See, e.g., In re MSTG, Inc.*, 675 F.3d 1337, 1347 (Fed. Cir. 2012)(stating that a party seeking discovery of confidential information "must demonstrate (1) a special need for the confidential material, (2) resulting unfairness from a lack of discovery, and (3) that the need for the evidence outweighs the interest in maintaining confidentiality."); *In re Teligent, Inc.*, 640 F.3d 53, 57-58 (2d Cir. 2011) (same); *Eisai Inc. v. Sanofi-Aventis U.S., LLC*, Civil Action No. 08-4168 (MLC), 2011 U.S. Dist. LEXIS 128447, at *25 (D.N.J. Nov. 7, 2011); *Block Drug Co., Inc. v. Sedona Labs., Inc.*, Civil Action No. 06-350-***, 2007 U.S. Dist. LEXIS 29028, at *6-7 (D. Del. Apr. 19, 2007) ("the focus of Rule 408 is to recognize the strong public policy favoring settlement and to promote that policy."). Here, Defendants have not made the required showing—and allowing such discovery would prejudice full and frank discussions with defendants, and parties who wish to voluntarily license the patent in good faith. It would also place an undue burden on TQ Delta to continue to produce documents relating to negotiations that are ongoing during the course of the case. Further, it would be manifestly unfair to allow any Defendant to leverage, collude, or interfere with ongoing licensing discussions with others, and thereby interfere with possible settlement. Lastly, "negotiations" are irrelevant; it is only the final "agreement" that may be relevant.

Respectfully submitted,

/s/ Michael J. Farnan

Michael J. Farnan

cc: Counsel of Record (Via E-Mail)