

June 10, 2016

**VIA E-FILE**
The Honorable Richard G. Andrews
844 North King Street, Unit 9, Room 6325
Wilmington, DE 19801

**FILED UNDER SEAL**

   Re: *TQ Delta LLC, et al.*, C.A. Nos. 15-cv-611-16-RGA

Dear Judge Andrews:

  TQ Delta responds to Defendants' June 9th letter. TQ Delta notes that it objected to select deposition topics (Ex. A) up front, including the drafting of patent claims, yet Defendants insisted on questioning the witness on matters for which he was not designated to testify.

  *TQ Delta's licensing activities*. TQ Delta did not object to the topic of executed license agreements. Defendants, however, sought discovery of licensing n*egotiations*–and other matters performed at the direction of counsel. "Negotiations" were not recited as a deposition topic. Neither of the topics cited by Defendants, no. 1 ("organizational structure") and no. 5 ("existence, nature, content, and location of . . . Documents . . . concerning Your or Techquity's participation . . . in any standards setting body") remotely relate to this topic. Further, courts impose heightened standards for discovery of licensing and settlement negotiations to further frank settlement discussions. (*See* D.I. 78, 15-cv-611-RGA at 2-3 (collecting cases).) Here, Defendants have not made the required showing—and allowing such discovery would prejudice full and frank discussions with defendants and good faith licensees. TQ Delta would be unduly burdened if required to produce documents relating to negotiations during the case. And it would be manifestly unfair to allow any Defendant to leverage, collude, or interfere with ongoing licensing discussions with others, and thereby interfere with possible settlement. Finally, "negotiations" are irrelevant; it is only the final "agreement" that may be relevant.

  *Acquisition and evaluation of the Aware portfolio*. Regarding its purchase of the Aware patent portfolio, TQ Delta properly raised the matter of a common interest privilege. For example, TQ Delta's objections were proper to the extent questions called for privileged and/or work-product matters . The "privilege may apply although communications include discussions of various business matters as long as they are 'infused with legal concerns." *See, e.g., MobileMedia Ideas LLC v. Apple*, 890 F. Supp. 2d 508, 510 (D. Del. 2012) (denying motion to compel similar documents). *See, e.g., Tenneco Packaging Specialty & Consumer Prods., Inc. v. S.C. Johnson & Son, Inc.*, 1999 U.S. Dist. LEXIS 15433, at *6 (N.D. Ill. Sep. 9, 1999); *Baxter Travenol Labs., Inc. v. Abbott Labs.*, No. 84 C 5103, 1987 WL 12919, at *1 (N.D. Ill. June 19, 1987).



And the witness fairly answered questions on the cited topic (no. 3) regarding ▮▮▮▮▮.

*The value of its portfolio*. At the outset, questions of "valuation" of the patent portfolio are beyond the scope of the notice (which, as Defendants assert, relate to "a classic 'background' deposition, seeking the names of relevant people and the identification of relevant documents"). Beyond that, to the extent any "valuation" was conducted at the request of counsel, it is privileged. ▮▮▮▮▮ Contrary to Defendants' assertions, the witness was not prevented from answering the question. ▮▮▮▮▮ Defendants' counsel had no follow-up. The deposition concluded.

Defendants maintain, improperly, that any valuation of patents conducted at the request of counsel is discoverable, arguing that it is a "business" function. ▮▮▮▮▮ Counsel insisted on asking the witness questions that called for disclosure of the attorney-client communication. ▮▮▮▮▮ Similarly, questions about what others did at the request of a lawyer are likewise privileged and attorney-work product, ▮▮▮▮▮ In essence, Defendants seek to dictate how such information should be labeled on a privileged log. But, contrary to Defendants' suggestions, courts have upheld privilege claims supported by high level descriptions that do not disclose details of the matter. *See, e.g., Mergentime Corp. v. Wash. Metro. Area Transp. Authority*, 1991 U.S. Dist. LEXIS 11080, at *11 (D.D.C. Aug. 6, 1991). Production has been denied where a party claiming work-product protection supported its claim "with a relatively skeletal description offered in the privilege log." *Long-Term Cap. Hold. v. U.S.*, 2002 U.S. Dist. LEXIS 23224, at *30 n.16 (D. Conn. 2002).

*Prosecution of the asserted patents.* Prior to the deposition, TQ Delta properly objected to designating a witness on "drafting of [patent] claims." (Ex. A at 6.) Notwithstanding the involvement of other parties, all such information is privileged and/or work product because they constitute actions undertaken at counsel's request and are therefore privileged.

*Finances, business and accounting.* Defendants incorrectly insist that notwithstanding Counsel's involvement in directing TQ Delta's activities concerning financial projections and accounting pertaining to its licensing operations, the information is discoverable. This is incorrect. The information is privileged. Defendants misstate that TQ Delta improperly has refused to provide any information regarding the accounting information it records or whether it even makes money at all. ▮▮▮▮▮



***Other Techquity entities not involved in the management or operation of TQ Delta***. Notwithstanding the separate company status of the various entities, TQ Delta has agreed to produce relevant documents for purposes of these lawsuits. Consistent with the agreed to scope of discovery, ▬▬▬, Defendants sought to engage in a fishing expedition of other companies having no such relationship to this case.

***Job functions of Techquity employees***. Contrary to Defendants contention that TQ Delta's counsel improperly claimed privilege on questions on the differences in job responsibilities between TQ Delta employees, Counsel merely instructed the witness not to answer to the extent it would reveal work done at request of counsel. (*E.g.*, Tr. at 38:5-8.) ▬▬▬

***Pre-suit investigation***. This was not a deposition topic. Yet, counsel questioned Mr. Roche on privileged pre-suit communications concerning the Defendants. (Tr. at 105:12-107:25.) Mr. Roche properly refused to answer questions on the basis of privilege. (Tr. at 105:12-109:16.)

***Bias***. TQ Delta counsel advised that questions as to financial interest and bias would be allowed in either the present deposition or Mr. Roche's personal deposition—not both. Defendants' counsel refused. (Tr. at 73:7-25.) TQ Delta remains agreeable to allow the deposition of Mr. Roche as to financial interest and bias.

***ESI Order – Searching of E-mail***. Defendants' refusal to search any e-mail unless Plaintiff demonstrates good cause is improper. Emails are the largest provenance of information today. *See Judicial Watch, Inc. v. United States DOC*, 2000 U.S. Dist. LEXIS 17667, 4 (D.D.C. 2000). And Defendants acknowledge that information relevant to these cases is stored in e-mail servers. *See* Ex. B (DISH Initial Disclosures), at p. 3. Separately, Defendants who are members of the Multimedia over Coax Alliance exchange MoCA proposals and communicate with each other regarding these MoCA proposals using e-mail. *See e.g.*, Ex. C (▬▬▬). Thus, it is highly probable that relevant information will be found in the e-mails of the Defendants. Further, granting Defendants' proposal would forego judicial economy and require this Court to hear every email discovery request and "micro-manage e-discovery." *Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 109 (E.D. Pa. 2010). Separately, Defendants' cite to the Federal Circuit's purported e-discovery model order is a non-starter as the order has been disavowed. *See* Ex. D (http://www.cafc.uscourts.gov/sites/default/files/model_orders.pdf)

***ESI Order – Number of Custodians***. Defendants seek to limit the number of custodians to five. Custodians in these cases will at least include personnel who communicate with MoCA, the manufacturers of the accused products, field personnel, marketing personnel and finance personnel. Therefore, Defendants proposal limiting the number of custodians to five should be rejected in favor of Plaintiff's proposal that calls for the standard ten custodians.

                                            Respectfully submitted,

                                            /s/ Michael J. Farnan

                                            Michael J. Farnan

cc: Counsel of Record (vial E-Mail)