IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TQ DELTA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 15-611 (RGA) |
| v. | ) | |
| | ) | REDACTED -- PUBLIC VERSION |
| COMCAST CABLE COMMUNICATIONS LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| TQ DELTA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 15-612 (RGA) |
| v. | ) | |
| | ) | REDACTED -- PUBLIC VERSION |
| COXCOM LLC and | ) | |
| COX COMMUNICATIONS INC., | ) | |
| | ) | |
| Defendants. | ) | |
| TQ DELTA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 15-613 (RGA) |
| v. | ) | |
| | ) | REDACTED -- PUBLIC VERSION |
| DIRECTV, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| TQ DELTA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 15-614 (RGA) |
| v. | ) | |
| | ) | REDACTED -- PUBLIC VERSION |
| DISH NETWORK CORPORATION, | ) | |
| DISH NETWORK LLC. and | ) | |
| DISH DBS CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

| | |
|---|---|
| TQ DELTA, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 15-615 (RGA) |
| v. | ) |
| | ) REDACTED -- PUBLIC VERSION |
| TIME WARNER CABLE INC. and TIME | ) |
| WARNER CABLE ENTERPRISES LLC, | ) |
| | ) |
| Defendants. | ) |
| TQ DELTA, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 15-616 (RGA) |
| v. | ) |
| | ) REDACTED -- PUBLIC VERSION |
| VERIZON SERVICES CORP., | ) |
| | ) |
| Defendant. | ) |

**DEFENDANTS' RESPONSIVE LETTER REGARDING THE JUNE 13, 2016**
**DISCOVERY CONFERENCE AT 11:00 A.M.**

| | |
|---|---|
| MORRIS, NICHOLS, ARSHT & TUNNELL LLP | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| Jack B. Blumenfeld (#1014) | Rodger D. Smith II (#3778) |
| Jennifer Ying (#5550) | Eleanor G. Tennyson (#5812) |
| 1201 North Market Street | 1201 North Market Street |
| P.O. Box 1347 | P.O. Box 1347 |
| Wilmington, DE  19899 | Wilmington, DE  19899 |
| (302) 658-9200 | (302) 658-9200 |
| jblumenfeld@mnat.com | rsmith@mnat.com |
| jying@mnat.com | etennyson@mnat.com |
| *Attorneys for Defendants Comcast Cable Communications LLC, CoxCom LLC, Cox Communications Inc., DIRECTV, LLC, Time Warner Cable Inc., and Time Warner Cable Enterprises LLC* | *Attorneys for Defendants DISH Network Corporation, DISH Network L.L.C., and DISH DBS Corporation* |
| | |
| ROSS ARONSTAM & MORITZ LLP | OF COUNSEL: |
| Benjamin J. Schladweiler (#4601) | |
| 100 S. West Street, Suite 400 | Michael G. Rhodes |
| Wilmington, DE  19801 | COOLEY LLP |
| (302) 576-1600 | 101 California Street, 5th Floor |
| bschladweiler@ramllp.com | San Francisco, CA 94111-5800 |
| *Attorney for Defendant Verizon Services Corp.* | (415) 693-2000 |

OF COUNSEL:

Nagendra Setty
ORRICK, HERRINGTON & SUTCLIFFE LLP
701 5th Avenue, Suite 5600
Seattle, WA 98104
(206) 839-4300

Alex V. Chachkes
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019
(212) 506-5000

George L. Kanabe
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
(415) 773-5700
*Attorneys for Defendant DIRECTV, LLC*


OF COUNSEL:
L. Norwood Jameson
Matthew C. Gaudet
Corey J. Manley
David C. Dotson
S. Neil Anderson
DUANE MORRIS LLP
1075 Peachtree Street N.E., Suite 2000
Atlanta, GA 30309-3929
(404) 253-6900

John M. Baird
DUANE MORRIS LLP
505 9th Street, N.W., Suite 1000
Washington, DC 2004-2166
(202) 776-7819
*Attorneys for Defendants Comcast Cable Communications LLC, CoxCom LLC, Cox Communications Inc., Time Warner Cable Inc., Time Warner Cable Enterprises LLC, and Verizon Services Cor*

Original Filing Date: June 10, 2016
Redacted Filing Date: June 17, 2016

Dear Judge Andrews:

Defendants submit this letter in response to TQD's June 9, 2016 letter (D.I. 78).[1]

**DTV's "MoCA Documents."** TQD argues that DIRECTV "wrongly sought to limit its production to '"feature specific' documents," meaning just documents reflecting accused MoCA features. That is incorrect. TQD is confusing DIRECTV's agreement to make a *complete* damages production on "feature specific documents," as TQD calls them, and a *representative* production on higher level documents. Ex. 1 (DIRECTV Resp. to TQD's RFPs), *esp*. pp. 4-6. DIRECTV explained this to TQD in multiple contexts, including: (i) in RFP objections, stating, *e.g.*, it would produce "generally, documents sufficient to show the technical diversity found in the Accused MoCA Products, *and the* [*relative*] *value* of those technologies as they relate to TQ Delta's claimed inventions" (*id.* at 5); and (ii) by email, stating, *e.g.*, "[w]e will produce representative marketing material (print only) for the accused devices" (Ex. 2 (6/2/16 email from Chachkes)). TQD is correct that DIRECTV is not producing all "customer preference" analyses—*e.g.*, analyses of consumer reaction to its TV lineup of channels or preference for black DVRs over red ones. Such analyses are irrelevant and would encompass virtually everything DIRECTV's marketing staff does. This would be enormously burdensome to collect, review and produce, and is not proportional under Rule 26.

**Customer-Specific Sales**. TQD demands "customer-specific sales data." DIRECTV has ▓▓▓▓▓▓▓▓▓▓▓ and strongly objects to providing individualized information regarding them—which is invasive, overly burdensome, and has no plausible relevancy. Thus, TQD's demands are not proportional to the needs of this case under Rule 26.

▓▓▓▓▓▓▓▓▓▓▓ TQD argues that DIRECTV should produce all material regarding ▓▓▓▓▓▓▓▓▓▓▓ TQD further argues—without support or evidence—that ▓▓▓▓▓▓▓▓▓▓▓ TQD Letter at 1. TQD is wrong on multiple levels, ▓▓▓▓▓▓▓▓▓▓▓ Ex. 3 (Barr Decl.). ▓▓▓▓▓▓▓▓▓▓▓ *Id.* Also, TQD's suggestion that the asserted patents underlie what was tested is wrong, and is refuted by Mr. Barr. *Id.* ▓▓▓▓▓▓▓▓▓▓▓ TQD, however, already has that information; the underlying data summarized in the produced document will not add to that.

**Organizational Charts**. DIRECTV objects to producing organizational charts. It has ▓▓▓▓▓▓▓▓▓▓▓, only a handful of which may have little relevance to this case. TQD will receive full discovery on the relevant personnel from depositions and document production.

**Indemnification Agreements**. TQD did not meet-and-confer regarding its request for

---

[1] Unless otherwise noted, all docket citations are to C.A. No. 15-611.

indemnification agreements. Had it, DIRECTV would have pointed out that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ which DIRECTV already produced.

**RFP 120.** In response to TQD's Interrogatory No. 2, DIRECTV has identified all relevant components of its accused devices, as requested. TQD has no objections to that response, but rather to DIRECTV's response to RFP 120, which seeks documents underlying Interrogatory No 2. This, however, would be completely redundant of what is already in the interrogatory response—the very definition of unduly burdensome. TQD implies this objection would somehow impede its ability to show infringement. But DIRECTV agreed to produce those documents in its *other* RFP responses. That is, DIRECTV has agreed to produce documents showing the structure, function and operation of all accused features. Ex. 1 at 1-2 (agreement to produce technical documents).

**RDK Documents**. TQD states that "Comcast objects to produce documents related to the RDK based on relevance," and argues this position "is untenable." TQD fails to note, however, that Comcast agreed to produce *any* relevant RDK documentation, including *all* documentation concerning MoCA. *See, e.g.,* Ex. 4 (6/8/16 email from Manley). Comcast also offered to identify categories of RDK documentation it does not produce. TQD's demand for *all* RDK documentation does not come close to satisfying the "proportional to the needs of the case" requirement of Rule 26. Indeed, Comcast's agreement to produce all RDK documentation concerning MoCA is itself far overbroad. TQD's infringement contentions only accuse three minor features of MoCA, and are based solely on the standard. Furthermore, as TQD acknowledged during the May 2, 2016 hearing, "there are three or four pages" of the hundreds of pages in the MoCA specification "that actually describe whatever it is that is important in this case." Ex. 5 (5/2/16 Hearing Tr.) at 27:22-28:5. Moreover, TQD fails to justify its demand for RDK documentation unrelated to MoCA, which covers many aspects of the products with no arguable relevance, including HDMI (unrelated standard for a cable between a TV and cable box), DOCSIS (unrelated standard for transmitting data from a provider to a customer), security, user input systems, and others. TQD's overbroad request should be denied.

**ESI Order—Preamble**. Defendants' position should not be controversial (or controverted): the Proposed ESI Order should control with respect to the subject matter therein. TQD has not identified any basis to the contrary. TQD does not identify any concrete examples of conflicts with the existing Protective Order or any other prior agreements, and TQD incorrectly suggests, without any basis or support, that Defendants somehow intend to use the Proposed ESI Order to get out of prior agreements to provide discovery from dismissed parties. TQD cites *Pansy,* but that case is inapposite—*Pansy* involved a dispute regarding confidentiality of settlement agreements and has nothing to do with ESI orders. Here, every term is either agreed or being resolved by the Court during the upcoming hearing. Accordingly, the Court should adopt Defendants' proposed preamble.

**ESI Order—Number of Search Terms**. As addressed in Defendants' letter (D.I. 77), these are not cases in which broad ESI searches are proportional to the needs of the case. And, as discussed above regarding the Comcast RDK, TQD's infringement contentions are based entirely on the MoCA standards—they do not even mention Defendants' products. Defendants' ESI therefore contain little relevant information. The fact that TQD accuses numerous products is beside the point, as the ESI Order already provides that a "disjunctive combination of the

accused product names or identifiers shall count as a single search term (e.g., (PRODUCT 1 OR PRODUCT 2 OR PRODUCT N) AND TERM shall count as a single term)." D.I. 77, Ex. 4 at 11-12. Under these circumstances, five search terms—in addition to those proposed by the producing party—is reasonable and proportional to the needs of the case.

**Protective Order for Negotiations**. TQD seeks a protective order to prevent discovery on license negotiations for the asserted patents. For the reasons in Defendants' letter (D.I. 77) and below, TQD's request should be denied. Licensing negotiations are highly relevant to patent damages. *See, e.g.*, *In re MSTG, Inc.*, 675 F.3d 1337, 1348 (Fed. Cir. 2012) (affirming ordered production of patent license negotiations); *Barnes & Noble, Inc. v. LSI Corp.*, 11-2709, 2013 WL 841334, at *2 (N.D. Cal. Mar. 6, 2013) (same); *Charles E. Hill & Assoc., Inc. v. ABT Elecs., Inc.*, 854 F. Supp. 2d 427 (E.D. Tex. 2012) (ordering production of patent license negotiations as relevant where plaintiff did not sell products or compete with defendant); *Tyco Healthcare Grp. LP v. E-Z-EM, Inc.*, 07:262, 2010 WL 774878, at *2 (E.D. Tex. Mar. 2, 2010) (ordering production of license negotiations); *see also Sciele Pharma, Inc. v. Lupin, Ltd.*, 09-37, D.I. 611 at 10 (D. Del. Feb. 11, 2013) (ordering production of license negotiations for non-asserted patent that was "sufficiently similar" to asserted patents). TQD misstates the relevant facts and law.

*First*, TQD suggests its licensing negotiations are privileged because its "licensing activity does involve requests from counsel" (TQD Letter at 3), but cites no authority for its argument. Nor could it, as such communications are *not* privileged. *See, e.g.*, *Leader Techs., Inc. v. Facebook, Inc.*, 719 F. Supp. 2d 373, 376-77 (D. Del. 2010) (finding no privilege for arms-length negotiations); *see also In re MSTG*, 675 F.3d at 1347 (declining to recognize a settlement negotiation privilege). Defendants do not seek privileged communications between TQD and its lawyers.

*Second*, TQD argues licensing "negotiations" were not a deposition topic. However, Topic 3 specifically covered "the assignment, purchase, and license" of the patents. D.I. 77, Ex. 2 at 4. Moreover, even if negotiations were outside the scope, this is not a proper basis to refuse to answer questions. *Crawford v. George & Lynch, Inc.*, 19 F. Supp. 3d 546, 554 (D. Del. 2013) ("[R]egardless of whether . . . questions or topics were noticed in the deposition . . . [a] Rule 30(b)(6) deponent must answer all inquiries that meet the requirements of Rule 26.").

*Third*, TQD wrongly argues that a heightened standard applies to discovery of licensing and settlement negotiations, arguing that *In re MSTG* requires a three-part test be satisfied. To the contrary, in *In re MSTG*, the Federal Circuit declined to rule on whether a heightened standard should apply to negotiations. *Id.* at 1341, 1347. TQD's other cases are also inapposite, as none of them involve patent licenses. TQD's reliance on Fed. R. Evid. 408 is also misplaced because the rule applies to admissibility, not discoverability. *Id.* at 1344 (stating Rule 408 does not protect settlement negotiations from discovery).

*Fourth*, TQD proposes a number of "policy" arguments—*e.g.*, that it would be prejudiced in future licensing; that it would be unduly burdensome to produce documents; that Defendants would somehow violate the Protective Order and "leverage, collude, or interfere with" TQD's licensing; and that its negotiations are "irrelevant." TQD Letter at 3. These arguments are unsupported by any facts or law. The simple fact is the licensing of asserted patents is the best window into their value, a central issue in any patent case.

               Respectfully,

               */s/ Jennifer Ying*

               Jennifer Ying (#5550)

cc:  Clerk of Court (by hand)
    All Counsel of Record (by e-mail)