IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TQ DELTA, LLC, <br><br>        Plaintiff, <br><br>    v. <br><br>COMCAST CABLE COMMUNICATIONS LLC, <br><br>        Defendant. | C.A. No. 15-611 (RGA) <br><br> REDACTED -- PUBLIC VERSION |
| TQ DELTA, LLC, <br><br>        Plaintiff, <br><br>    v. <br><br>COXCOM LLC and <br>COX COMMUNICATIONS INC., <br><br>        Defendants. | C.A. No. 15-612 (RGA) <br><br> REDACTED -- PUBLIC VERSION |
| TQ DELTA, LLC, <br><br>        Plaintiff, <br><br>    v. <br><br>TIME WARNER CABLE INC. and TIME <br>WARNER CABLE ENTERPRISES LLC, <br><br>        Defendants. | C.A. No. 15-615 (RGA) <br><br> REDACTED -- PUBLIC VERSION |
| TQ DELTA, LLC, <br><br>        Plaintiff, <br><br>    v. <br><br>VERIZON SERVICES CORP., <br><br>        Defendant. | C.A. No. 15-616 (RGA) <br><br> REDACTED -- PUBLIC VERSION |

**LETTER TO THE HONORABLE RICHARD G. ANDREWS FROM JENNIFER YING
REGARDING DEFENDANTS RESPONSE TO TQ DELTA'S
<u>LETTER OF SEPTEMBER 15, 2016</u>**

Case 1:15-cv-00616-RGA   Document 137   Filed 09/20/16   Page 2 of 6 PageID #: 4419

OF COUNSEL:

L. Norwood Jameson
Matthew C. Gaudet
Corey J. Manley
David C. Dotson
S. Neil Anderson
Alice E. Snedeker
DUANE MORRIS LLP
1075 Peachtree Street N.E., Suite 2000
Atlanta, GA 30309-3929
(404) 253-6900

John M. Baird
DUANE MORRIS LLP
505 9th Street, N.W., Suite 1000
Washington, DC 2004-2166
(202) 776-7819

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jying@mnat.com

*Attorneys for Defendants Comcast Cable Communications LLC, CoxCom LLC, Cox Communications Inc., Time Warner Cable Inc. and Time Warner Cable Enterprises LLC*

ROSS ARONSTAM & MORITZ
Benjamin J. Schladweiler (#4601)
100 South West Street, Suite 400
Wilmington, DE 19801
(302) 576-1600
bschladweiler@ramllp.com

*Attorneys for Defendant Verizon Services Corp.*

Original Filing Date:  September 16, 2016
Redacted Filing Date:  September 20, 2016

# Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

(302) 658-9200
(302) 658-3989 FAX

Jennifer Ying
(302) 351-9243
jying@mnat.com

Original Filing Date: September 16, 2016

Redacted Filing Date: September 20, 2016

REDACTED -- PUBLIC VERSION

The Honorable Richard G. Andrews  *VIA ELECTRONIC FILING*
The United States District Court
 for the District of Delaware
844 North King Street
Wilmington, DE 19801

      Re:   *TQ Delta, LLC v. Comcast Cable Communications LLC, et al.*,
            C.A. Nos. 15-611; 15-612; 15-615; 15-616 (RGA)

Dear Judge Andrews:

      Defendants hereby respond to TQ Delta's letter (C.A. No. 15-611, D.I. 134).[1]

      TQ Delta's requests are moot, seek far over-broad discovery not proportional to the needs of the cases, and rely on unsupported speculation about what documents Defendants must have. TQ Delta's arguments in support of these requests ignore that Defendants have already agreed to provide overbroad discovery in trying to resolve the disputes, appear to misunderstand the importance of MoCA to Defendants, and fail to account for the fact that some of the events at issue occurred nearly ten years ago. TQ Delta also appears to lose sight of the fact that Defendants are cable *service* providers. They do not make the accused products (generally set top boxes, gateways, and similar products). Nor do they make the MoCA chips in which the accused functionality resides. Instead, Defendants merely offer services using these products, which they purchase from vendors, who in turn purchase MoCA chips from other vendors. In addition, all of MoCA is only one relatively minor feature of many in the accused products and, as TQ Delta acknowledges, "there are three or four pages" of the hundreds of pages in the MoCA specification "that actually describe whatever it is that is important in this case." (Ex. A (5/2/16 Hearing Tr.) at 27:22-28:5.) TQ Delta's requests should be denied.

      **Computer Generated Financial Reports for the Accused Products.** TQ Delta does not complain about the scope of financial documents Defendants agreed to provide. Nor could it. In attempting to avoid a dispute, Defendants agreed to produce extensive financial information even though almost none of it is relevant to the accused features or MoCA. Instead, TQ Delta complains that Defendants have been "dilatory" in producing the information.[2] But,

---

[1] Although ultimately not relied upon by TQ Delta, Defendants disagree with TQ Delta's statements that Defendants' RFP objections are inadequate or that Defendants have "renege[d]" on promises.

[2] TQ Delta's letter gives the impression that document production is complete except for Defendants' alleged deficiencies. But, TQ Delta produced more than 27,000 pages (nearly half

The Honorable Richard G. Andrews
September 16, 2016
Page 2

TQ Delta fails to recognize that the breadth of its requests is a significant cause of any delay in production. Defendants have repeatedly told TQ Delta that they have been diligently working to collect financial information. Indeed, Defendants' collection efforts have required significant resources including, large amounts of time from multiple finance employees at each Defendant. Contrary to TQ Delta's claim, Defendants do not have this information "readily available." And the letter to a U.S. Senator that TQ Delta cites provides no support for TQ Delta's claim.

TQ Delta's dismissal of the information that Defendants have produced as "a smattering of miscellaneous documents containing tangentially-related information that is not tailored to the accused products," is also incorrect. For example, [REDACTED] Furthermore, Cox has now substantially completed production of financial information, and the remaining Defendants believe they can substantially complete their production of financial documents by the October 3 deadline proposed by TQ Delta. Thus, TQ Delta's letter on this issue is moot.

**Organizational Chart & Equivalent Information.** The information that TQ Delta seeks on this topic is far overbroad, and TQ Delta does not even have discovery requests that cover such information. Although TQ Delta has an RFP that seeks organizational charts, that request is far overbroad, and would potentially include thousands of employees. TQ Delta refused to narrow that request to a reasonable scope. Furthermore, the information TQ Delta seeks regarding specific knowledge of topics would not be found in organizational charts. Instead, it would typically be discovered via a deposition or an interrogatory. But, TQ Delta has not served any notices of deposition, and it has not served any interrogatories seeking this information. Moreover, the identity of such individuals back to 2003 has little, if any, relevance to the case. Nonetheless, in another attempt to compromise and avoid a dispute, Defendants agreed to provide nearly all of this information. (*See* Pl. Ltr. Ex. A at 1.) However, TQ Delta still seeks the identity of "individuals most knowledgeable regarding marketing of the Accused Products going back to the earliest consideration of MoCA, circa 2003." But Defendants all considered using MoCA at different times and it is illogical that there would be any relevant marketing information concerning the accused products from time periods—for some Defendants, years—before such products were even offered. Moreover, Defendants do not market MoCA, much less the accused features of MoCA.

**Patent Licenses.** Contrary to TQ Delta's assertion, Defendants have not "unduly limit[ed] the production of relevant license agreements." In fact, as with the other disputes discussed above, Defendants already agreed to provide an overbroad scope of patent licenses in response to TQ Delta's requests. Specifically, Defendants agreed to produce licenses they are

---

of its entire production) on August 26, 2016, and the parties are still discussing the appropriate scope of any email discovery. (*See* Ex. B (6/13/16 Hearing Tr.) at 68:4-19.) In contrast, nearly all of Defendants' documents were produced *before* mid-July.

aware of that [REDACTED] Given that only three narrow features of MoCA have been accused of infringement—signal phase scrambling, a low-power mode, and a diagnostic mode—this is more than proportional to the needs of the case. TQ Delta, however, requests that Defendants also produce any patent licenses "relating to the distribution of video within the home over coaxial cable." But, Defendants' primary business is to distribute video in homes over coaxial cable, and this request that TQ Delta mischaracterizes as "narrow" could cover nearly every aspect of Defendants' businesses, most of which have nothing to do with the accused technologies or even MoCA. This request is not proportional to the needs of the case.

### Participation in the MoCA Alliance Re: the Subject Portions of the Standards & Decision to Implement MoCA.

For both of these issues, the Parties do not dispute the scope of documents to be produced. To the extent additional MoCA documents of the type listed by TQ Delta are identified, Defendants have agreed to produce them. Nor does TQ Delta provide actual evidence that Defendants have documents that are not being produced. Instead, TQ Delta's motion is merely unsupported speculation that Defendants have more than they say.

TQ Delta is incorrect that Defendants failed to produce any documents concerning their participation in MoCA. For example, Defendants produced [REDACTED] To the extent Defendants do not have all of the documents TQ Delta seeks, it is not surprising given that Defendants do not make either the accused products or the MoCA chips in those products. Moreover, MoCA maintains many of these types of documents, which are MoCA confidential, and TQ Delta has already subpoenaed MoCA for such documents. It is Defendants' understanding that MoCA indicated it will produce such documents within days.

With respect to Defendants' decision to implement MoCA, TQ Delta argues that "Defendants obviously undertook a study of the benefits of MoCA before undertaking to replace perhaps tens of thousands of non-MoCA set-top boxes with new, Accused MoCA products" and that "these analyses surely rose to high levels in the company" and "involved enormous capital expenditure." But, this is pure speculation and the evidence TQ Delta cites does not support its claims. For example, TQ Delta's Exhibit F appears to be an Internet article about Comcast from a third party, which does not say anything of the sort alleged by TQ Delta. Likewise, TQ Delta's Exhibit G is a Comcast presentation for Credit Suisse First Boston in December 2004 that does not appear to say anything about MoCA and instead appears to relate primarily to Comcast's back-end network infrastructure, and not even MoCA products.

Moreover, Defendants already confirmed that, to the extent they are to discover any such additional MoCA documents, Defendants will, of course, promptly produce them. And although TQ Delta has not yet noticed a single deposition, it will have the opportunity to confirm these facts during the normal course of discovery. TQ Delta's requests are moot.

The Honorable Richard G. Andrews
September 16, 2016
Page 4

                                      Respectfully,

                                      */s/ Jennifer Ying*

                                      Jennifer Ying (#5550)

cc:      Clerk of Court (by hand)

All Counsel of Record (by e-mail)