

October 6, 2016

**VIA E-FILE**

The Honorable Richard G. Andrews
USDC for the District of Delaware
844 North King Street, Unit 9, Room 6325
Wilmington, DE 19801

**FILED UNDER SEAL**

Re:   *TQ Delta v. Comcast et al., nos. 15-cv-611, 15-cv-612, 15-cv-613, 15-cv-614, 15-cv-615, and 15-cv-616*

Dear Judge Andrews:

   Plaintiff TQ Delta moves the Court for an order compelling Defendants to fully comply with TQ Delta's Requests for Production of Documents and Things ("RFPs") and with Interrogatories 3 through 6 issued to Defendants in these cases. Defendants have ignored the Court's deadline of July 15 for substantial completion of discovery and have refused to comply with many of TQ Delta's document requests. Furthermore, Defendants provide no clarity on what will be searched for and/or produced.[1] Equally troubling are statements made by some Defendants that they will produce only those documents that they unilaterally deem "relevant" and "proportional to the needs of the case." Finally, Defendants have made repeated promises to produce the requested information "after a meet and confer," only to subsequently renege on their promises after additional "meet-and-confers." For these reasons, TQ Delta is forced to burden this Court for an order compelling Defendants to produce documents and information relating to the topics set forth below.

   ***Computer Generated Financial Reports for the Accused Products.*** Various document requests call for basic financial information tied to the accused products (*e.g.*, units, leasing and other accused product revenues, costs, and margins). All Defendants except Dish and EchoStar (collectively, "DISH") have promised to provide a complete production of requested financial information by October 25. *See, e.g.*, Ex. A (e-mail summarizing October 4 meet-and-confer). In a meet-and-confer that occurred on October 4, counsel for DISH represented that its clients do not keep track of revenues for Accused Products and that this information cannot be derived from a database. TQ Delta asked for a Declaration from a DISH employee to verify that statement. Counsel for DISH refused to provide such a Declaration. *See, e.g.*, Ex. A, at pp. 1-2. That this is surprising to say the least, is borne out by the fact that the other defendants have agreed to provide custom-generated reports. It is highly unlikely that this product revenue information is not maintained in a corporate database. TQ Delta requests that the Court order DISH to produce this highly relevant, requested financial information, and to complete its production of the financial information, as set forth in the proposed Order, by October 31.

---

[1] Rule 37 states, "An objection must state whether any responsive materials are being withheld on the basis of that objection." F.R.C.P. 34(b)(2)(C). The Committee Notes explain that "[t]his amendment should end the confusion that frequently arises when a producing party states several objections and still produces information, leaving the requesting party uncertain whether any relevant and responsive information has been withheld . . . ."

***Interrogatory No. 3 (Whether the asserted claims read on the accused products).*** This Interrogatory (which was issued to each Defendant) seeks Defendants' bases for non-infringement, including whether each Accused MoCA Product implements the cited portions of the MoCA Specification (and supporting documents and most knowledgeable persons). Each Defendant has refused to respond, citing only a list of the patent claim limitations with no reasoning or factual basis. And no Defendant cited to any document that could possibly support Defendants' positions. Defendants should be required to reveal the factual support for, and all documents supporting, their current contentions of non-infringement. And, even if the Court believes that full noninfringment contentions may be postponed until the latter part of discovery, Defendants should be required to explain the factual basis now for their contentions about whether, or not, the Accused Products – that are sold and marketed by Defendants as being "MoCA-compliant" implement the subject portions of the identified MoCA Specifications. Defendants simply argue that they cannot "prove a negative." This is insufficient. Defendants are aware of facts that they contend support noninfringment. They should be required to disclose those facts now. TQ Delta is entitled to non-infringement contentions of similar detail as its infringement contentions, which TQ Delta produced to Defendants in March 2016. *See Tritek Techs., Inc. v. U.S.*, 63 Fed. Cl. 740, 746 (2005) (noting that it is reasonable to conclude that upon receiving Plaintiff's infringement contentions, Defendant was in a position to begin the process of determining its non-infringement theories); *see also Lambda Optical Sols., LLC v. Alcatel-Lucent USA Inc.*, 2013 WL 1776104, at *9 (D. Del. Apr. 17, 2013). An order is required.

***Interrogatory No. 4 (Whether the asserted claims read on the MoCA standard).*** This Interrogatory (which was issued to each Defendant) seeks, *inter alia*, a full explanation of all reasons why Defendants assert that the asserted patent claims are essential, or not essential, to implement the MoCA Standard. This request necessarily encompasses each Defendant's positions as to whether an asserted patent claim reads on the MoCA Standard, or not. Each Defendant only responded that "no [asserted] patent claim … is essential to the implementation of MoCA." But, this is not a complete or sufficient response, as it lacks any explanation whatsoever, nor does it identify relevant documents or knowledgeable persons. By way of example, no Defendant responded whether and which part of the claims do not cover the subject sections of the MoCA Standard. Nor have they cited to any documents that could possibly provide responsive information. An order is required.

*Interrogatory No. 6.* This Interrogatory seeks the "actual, expected and/or contemplated monetary (*e.g.*, increased revenue, reduced costs) and non-monetary benefits associated with the sale, rental, provision and/or use of the Accused MoCA Products," including an identification of documents and persons "most knowledgeable." By way of example, and as explained to Defendants multiple times, at least one "non-monetary benefit" of MoCA Products would be customer satisfaction and desired DVR functionality. The MoCA Alliance's own website makes that clear. *See, e.g.*, the MoCA Alliance's web site, http://www.mocainyourhouse.com/ ("Home network products with MoCA instantly turn your existing coax TV cable into a powerful, easy to use network for Internet access, Wi-Fi® and entertainment or just about anything you want").

On September 22, 2016, the Court issued an Order requiring the cable Defendants (Comcast, Coxcom, Time Warner and Verizon) to comply with this Interrogatory. *See* D.I. 141, at p. 3 ¶ 4. And, during the October 4 meet-and-confer, DIRECTV agreed to fully respond to this Interrogatory by October 25. Only DISH has refused to provide a substantive response.

DISH, like the other Defendants, analyzed competing technologies and recognized the benefits of MoCA before undertaking to replace perhaps tens of thousands of non-MoCA set-top

boxes with the Accused MoCA Products. *See*, Ex. D █████████████████████████
████████████████████████████████████████████████████████████

These analyses rose to high levels in the company, as the decision for EchoStar to manufacture, and Dish to swap out from its customers, existing set top boxes to deploy the MoCA products involved an enormous capital expenditure – to address competitive threats from other providers who had deployed MoCA products. Those analyses reflect a consideration of the costs and benefits of MoCA and the risks of not deploying MoCA products (*e.g.*, losing customers to competitors in an annual market worth billions). The documents surely reflect the benefits of MoCA versus conventional (non-MoCA) set top box products. This Court previously agreed with TQ Delta that studies and analyses of the type requested are reasonable. *See* Ex. B (Tr. of June 13, 2016 proceeding), at p. 19 (Court: "find out whether your client has anything about why people pick whole home rather than direct point-to-point. If you've got something that fits that category, produce it.")).

       DISH did not respond with the requested information and simply responded with attorney argument that, "at most a *de minimus* amount [] of the revenue (and any profit) that it generates is due to the features of MoCA which TQ Delta has apparently accused of infringement." Counsel for DISH, during the October 4 meet-and-confer, continued to refuse to respond to this Interrogatory and parroted the self-serving statement. *See* Ex. A, at pp. 3-4. This is improper. DISH's counsel cannot be the arbiter of the importance of the accused product features or other issues of relevance. TQ Delta maintains that the Accused Products must practice the patented features to provide the MoCA functionality. Moreover, matters of apportionment of revenue and profits attributable to the patented features of the Accused Products are unquestionably a matter for experts, not the self-serving judgment of Defendants' counsel.

       Additionally, DISH, in purported reliance on Fed. R. of Civ. P. 33(d), responded with an identification of 8,728 pages of documents and represented that these documents "may contain information responsive to this Interrogatory." *See* Ex. C (redacted, relevant pages of DISH's response to Interrogatory no. 6). But such a response does not comply with Rule 33(d). Rule 33(d) requires the responding party to first ensure that "the burden of deriving or ascertaining the answer [from the produced records] will be substantially the same for either party." Only then, which is not the situation here, the responding party may "specify[] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." DISH's blunderbuss citation to 8,728 pages does not comply with either requirement of Rule 33(d) and is therefore deficient. Documents produced by DISH (EchoStar) suggest that information relating to the benefits of MoCA may be missing. *See e.g.*, Ex. D ████████████████████████████████████████ TQ Delta cannot discern a response from documents that lack relevant information.

       TQ Delta is entitled to full responses from the Defendants. An Order is required.

                                    Respectfully submitted,

                                    /s/ Michael J. Farnan

                                    Michael J. Farnan

Cc: Counsel of Record (via E-Mail)