IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TQ DELTA, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 15-611 (RGA) |
| v. | ) |
| | ) REDACTED -- PUBLIC VERSION |
| COMCAST CABLE COMMUNICATIONS LLC, | ) |
| | ) |
| Defendant. | ) |
| TQ DELTA, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 15-612 (RGA) |
| v. | ) |
| | ) REDACTED -- PUBLIC VERSION |
| COXCOM LLC and | ) |
| COX COMMUNICATIONS INC., | ) |
| | ) |
| Defendants. | ) |
| TQ DELTA, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 15-613 (RGA) |
| v. | ) |
| | ) REDACTED -- PUBLIC VERSION |
| DIRECTV, LLC, | ) |
| | ) |
| Defendant. | ) |
| TQ DELTA, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 15-614 (RGA) |
| v. | ) |
| | ) REDACTED -- PUBLIC VERSION |
| DISH NETWORK CORPORATION, | ) |
| DISH NETWORK LLC, | ) |
| DISH DBS CORPORATION, | ) |
| ECHOSTAR CORPORATION, and | ) |
| ECHOSTAR TECHNOLOGIES, L.L.C. | ) |
| | ) |
| Defendants. | ) |

| | |
|---|---|
| TQ DELTA, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 15-615 (RGA) |
| v. | ) |
| | ) REDACTED -- PUBLIC VERSION |
| TIME WARNER CABLE INC. and TIME WARNER CABLE ENTERPRISES LLC, | ) |
| | ) |
| Defendants. | ) |
| TQ DELTA, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 15-616 (RGA) |
| v. | ) |
| | ) REDACTED -- PUBLIC VERSION |
| VERIZON SERVICES CORP., | ) |
| | ) |
| Defendant. | ) |

# **DEFENDANTS' LETTER IN RESPONSE TO DELTA'S OCTOBER 6, 2016 LETTER**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jying@mnat.com

*Attorneys for Defendants Comcast Cable Communications LLC, CoxCom LLC, Cox Communications Inc., DIRECTV, LLC, Time Warner Cable Inc., and Time Warner Cable Enterprises LLC*

OF COUNSEL:

L. Norwood Jameson
Matthew C. Gaudet
Corey J. Manley
David C. Dotson
S. Neil Anderson
DUANE MORRIS LLP

ROSS ARONSTAM & MORITZ LLP
Benjamin J. Schladweiler (#4601)
100 S. West Street, Suite 400
Wilmington, DE  19801
(302) 576-1600
bschladweiler@ramllp.com

*Attorneys for Defendant Verizon Services Corp.*

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
Eleanor G. Tennyson (#5812)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com
etennyson@mnat.com

*Attorneys for Defendants Dish Network Corporation, Dish Network LLC, Dish DBS Corporation, Echostar Corporation and Echostar Technologies, L.L.C.*

1075 Peachtree Street N.E., Suite 2000
Atlanta, GA 30309-3929
(404) 253-6900

John M. Baird
DUANE MORRIS LLP
505 9th Street, N.W., Suite 1000
Washington, DC 2004-2166
(202) 776-7819

*Attorneys for Defendants Comcast Cable Communications LLC, CoxCom LLC, Cox Communications Inc., Time Warner Cable Inc., Time Warner Cable Enterprises LLC; and Verizon Services Corp.*

OF COUNSEL:

Nagendra Setty
ORRICK, HERRINGTON & SUTCLIFFE LLP
701 5th Avenue, Suite 5600
Seattle, WA 98104
(206) 839-4300

Alex V. Chachkes
Tyler S. Miller
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019
(212) 506-5000

George L. Kanabe
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
(415) 773-5700

*Attorneys for Defendant DIRECTV, LLC*

Original Filing Date: October 7, 2016
Redacted Filing Date: October 14, 2016

OF COUNSEL:

Michael G. Rhodes
COOLEY LLP
101 California Street, 5th Floor
San Francisco, CA 94111-5800
(415) 693-2000

Stephen R. Smith
Rose Whelan
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
(202) 842-7800

Heidi L. Keefe
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
(650) 843-5000

Stephen McBride
COOLEY LLP
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, VA 20190-5656
(703) 456-8000

*Attorneys for Defendants Dish Network Corporation, Dish Network LLC, Dish DBS Corporation, Echostar Corporation and Echostar Technologies, L.L.C.*

Dear Judge Andrews:

In its letter (C.A. No. 15-611, D.I. 150), TQD seeks documents and information that Defendants do not have (or previously provided), supplementation of interrogatory responses simply because TQD disagrees with Defendants' contentions, and to reverse the burden of proving infringement by asking Defendants to provide more detailed non-infringement information than what TQD provided in its own infringement contentions. None of these are proper grounds for relief. TQD's requests should be denied.[1]

***DISH & EchoStar: Financial Reports.*** TQD misstates DISH and EchoStar's productions, as well as representations made at the October 4 meet and confer. DISH and EchoStar already produced the requested unit and cost information, and EchoStar produced the requested revenue information. (*See, e.g.,* Exs. A-C.) TQD's only complaint is that DISH has not produced revenue broken out for the accused products. But, DISH told TQD it was searching for this information and would produce what it found. (Ex. D (10/4/16 E-Mail to TQD) at 1.) DISH even agreed to provide the same thing as DIRECTV. (*Id.* ("DISH is in the same place DirecTV came out, and EchoStar has already produced revenues per product related to the Accused Products.").) After the meet and confer, DISH produced revenue associated with the accused products. (*See, e.g.,* Ex. E.) This is exactly what TQD seeks and it is unclear why TQD is pursuing this non-existent dispute.

***All Defendants: Interrogatory No. 3.*** TQD seeks to improperly shift the burden of proving infringement onto Defendants. TQD's infringement contentions do not identify how the accused products operate or allegedly meet any limitations of the asserted claims. (*See, e.g.*, Ex. F (exemplary DIRECTV claim chart).) Instead, TQD accuses two versions of the MoCA *standard*, citing nothing more than a small number of pages from three standard specifications across all claim charts for all Defendants, purportedly covering over 100 accused products. (*See id.*) And TQD has not mapped any portions of those standards to the operation or functionality of any accused product, as it is required to do. (*See id.*) Notwithstanding those deficiencies, TQD seeks to compel Defendants to provide far more detailed non-infringement contentions than what TQD has provided in its own infringement contentions. This is improper.

In addition to ignoring the lack of detail in its contentions, TQD glosses over the fact that Defendants each provided several pages of detailed substantive non-infringement contentions. For example, Defendants identified the specific claim elements they believe are absent from the accused products. (*See, e.g.*, Ex. G (Comcast Resp.) at 4-6.) Defendants indicated that devices ■■■ (*Id.* at 4.) Defendants indicated that, ■■■ Defendants also indicated that ■■■ (*See, e.g., id.* at 5-6.) Defendants further indicated that ■■■ (*See, e.g.*, Ex. H (Cox Resp., identifying

---

[1] Although not ultimately relied upon by TQD, Defendants disagree with the unsupported laundry list of purported improper discovery conduct and deficiencies of Defendants alleged in TQD's introduction to its letter.

products not deployed with MoCA) at 4.)

Moreover, TQD would illogically require Defendants to prove negatives—*e.g.*, the absence of claim limitations or that an accused feature of MoCA is not used. But the fact that, for example, a feature of a standard is not used may not be explicitly documented. For example, Defendants do not have checklists of all MoCA features (numbering in the thousands, or more) that indicate "yes" or "no" for whether the feature is used. Rather, in general, features are used—in which case there would be evidence in the product of use—or not used—in which case there would be an absence of such evidence. Furthermore, it is the third-party manufacturers of the accused products and of the MoCA chips used in those devices—not Defendants—that would likely have any documentary evidence that features are not used or that limitations are not present. The Court should not require Defendants to prove a negative, based on documents they do not even possess, where TQD has not made a proper attempt to demonstrate infringement in the first place. *See, e.g.*, *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 849 (2014) (holding "the burden to prove infringement never shifts [to the alleged infringer] if the charge is denied in the plea or answer") (alteration in original)). *Lambda Optical*, which TQD cites, confirms this. In that case, the court found the plaintiff "was not entitled to detailed non-infringement contentions from [the defendant] until it had set forth infringement contentions in similar detail." 2013 WL 1776104, at *9. Finally, TQD ignores that most Defendants *did* identify individuals with knowledge of the operation of the accused products that support their contentions. TQD's request should be denied.

***All Defendants: Interrogatory No. 4.*** This request seeks contentions on whether a "claim is or is not essential to the implementation of any MoCA Standard." TQD incorrectly states that Defendants' responses "lack[] any explanation whatsoever" as to their contentions that "no [asserted] claim . . .is 'essential' to the implementation of a MoCA Standard . . . ." In fact, Defendants' responses explicitly explain why no such claim is essential. For example:



(Ex. G at 8.) As discussed above, Defendants' responses to Interrogatory No. 3 specifically indicate why the accused products do not infringe. Because TQD's infringement contentions are based solely on the MoCA standards, Defendants' responses to Interrogatory No. 3 also indicate why the asserted claims do not cover the aspects of MoCA on which TQD's infringement contentions rely. Indeed, when asked during the parties' meet and confer, TQD was unable to identify—in view of its standard-based infringement contentions—what information sought in Interrogatory No. 4 is not also sought in Interrogatory No. 3.

TQD also complains that Defendants have not identified relevant documents or persons knowledgeable about whether the asserted claims are "MoCA essential." But, TQD does not explain why Defendants would have such documents or why Defendants' employees would have

information on the standard essentiality of the asserted claims.

***DISH & EchoStar:  Interrogatory No. 6.***  TQD again misstates DISH and EchoStar's positions.  During the October 4 meet and confer, DISH and EchoStar agreed to "supplement [Interrogatory 6] to identify specific individuals and documents."  (Ex. D at 1.)  TQD seeks production of studies and analyses of the benefits of MoCA, but DISH and EchoStar already produced such documents (*see, e.g.,* Ex. I (ECHO00020024)) and agreed to search for additional responsive documents.  Further, most potentially relevant documents were produced recently and DISH and EchoStar agreed to supplement their interrogatory response to identify the documents.

TQD complains that DISH and EchoStar's response is "self-serving" and "attorney argument," but this has more to do with TQD's disagreement with the substance of the response than any refusal to respond by DISH or EchoStar.  DISH and EchoStar are not required to adopt TQD's case theories in their responses.  Nonetheless, both have agreed to provide further narrative responses.

TQD also adds additional issues that have not been the subject of a meet and confer, and therefore, are not ripe for adjudication.  *First*, TQD argues that DISH's citation to documents under Rule 33(d) is improper.  But the cited documents contain financial information produced at that time that would have included any responsive information about any monetary benefit associated with the accused products.  Under Rule 33(d), "the burden of deriving or ascertaining [an answer to TQD's interrogatory] is substantially the same" for TQD, and TQD can "locate and identify [the records] as easily as" DISH and EchoStar could.  In any event, DISH and EchoStar have already agreed to supplement their responses to identify additional documents and individuals.  (Ex. D.)

*Second*, TQD picks a random document EchoStar produced (Ex. E to TQD's opening letter (D.I. 150)[2]) to suggest that EchoStar is withholding relevant information.  But, that document was recently produced and was not discussed at the meet and confer.  Further, TQD had never previously complained that it was missing an attachment.  If TQD had asked, EchoStar would have clarified that the purportedly missing attachment had already been produced.  (Ex. I (ECHO00020024).)  As with TQD's other DISH and EchoStar specific disputes, there is no dispute for to resolve.

                                                      Respectfully,

                                                      */s/ Jennifer Ying*

                                                      Jennifer Ying (#5550)

cc:    Clerk of Court (by hand)
         All Counsel of Record (by e-mail)

---

[2] TQD mistakenly cites Ex. D in its letter.