IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TQ DELTA, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. Nos. 15-611, -612, -614, -615 and -616 |
| | ) |
| COMCAST COMMUNICATIONS LLC, et al., | ) |
| | ) |
| Defendants. | ) |

**NON-PARTY BROADCOM'S MOTION TO ENTER CONFLICTS ORDERS
FROM DSL CASES IN MOCA CASES**

Pursuant to the Court's June 25, 2021 Order, D.I. 283,[1] Non-party Broadcom Corporation ("Broadcom"), by and through its attorneys, hereby respectfully requests that the Court order that the conflicts orders it previously entered in the related TQ Delta, LLC ("TQD") DSL cases, C.A. Nos. 13-1835, D.I. 238, 239, and 254, also be entered as orders in these MoCA cases. A proposed order is attached. Broadcom has conferred with counsel for TQD, who indicated that TQD opposes the relief requested. In order to avoid burdening the Court with duplicative motions, Broadcom proposed, and TQD agreed, to a briefing schedule for this motion. The parties agree that, subject to the Court's approval, Broadcom will file this opening motion, followed by the normal briefing schedule under the Local Rules, except that TQD will be permitted to file a surreply brief within seven days of any reply brief filed by Broadcom.

### I.  INTRODUCTION AND BACKGROUND

This Court previously found that the law firm of McAndrews, Held, & Malloy ("McAndrews") has a conflict of interest that prevents it from taking discovery from its former client, Broadcom. Some of the facts supporting this finding included that McAndrews had

---

[1]   All references are to the Docket in C.A. No. 15-611, unless otherwise indicated.

earned over $130 million in fees while it acted for a period of many years as Broadcom's primary IP firm, and many of the very same McAndrews attorneys who had long represented Broadcom were now representing TQD. Even more troublingly, McAndrews had worked to prosecute Broadcom patents covering many of the very same Broadcom semiconductor chips that McAndrews now, on behalf of TQD, accuses of infringing. *See* C.A. No. 13-1835, D.I. 238 at 10 (finding, *e.g.*, that McAndrews' behavior "violates Rule [of Professional Conduct] 1.9"); Broadcom's Cross-Motion to Disqualify and Supporting Declarations, attached here as Exhibit 1 (setting forth the facts supporting disqualification in detail).

The Court therefore ordered that the McAndrews' law firm be walled off from "conflicts counsel" who would take discovery from Broadcom, so that Broadcom would "not be compelled to sit across the table from its former counsel." *See* C.A. No. 13-1835, D.I. 238 at 15; D.I. 239 at 2; D.I. 254 at 3 ("walling orders"). The walling orders placed strict limitations on how McAndrews and the experts with which it was working could interact with conflicts counsel in order to protect Broadcom from the very real possibility that McAndrews would—whether accidentally or deliberately—misuse the plethora of information about Broadcom that it had gained over the course of its representation. In entering these orders, the Court rejected arguments that the matters in which McAndrews is now representing TQD were not substantially related to the work McAndrews did for Broadcom, noting, for example, that "Broadcom identified approximately 216 patents and applications in the USPTO database that identify McAndrews as Broadcom's prosecution counsel on their faces that relate to DSL *or MoCA* technologies." C.A. No. 13-1835, D.I. 238 at 9 (emphasis added). The Court was also not persuaded by McAndrews' attorneys' claims that they did not recall the work that they did for Broadcom and/or did not have any Broadcom confidential information. *Id.* ("[T]he substantial

scope of McAndrews' representation of Broadcom, which resulted in more than $132,000,000 in billings … suggests that Broadcom may have disclosed to McAndrews confidences that could be relevant to TQ Delta's patent infringement claims against Broadcom's customers.").

At the time the first walling order entered in September of 2016, the present MoCA cases were on the brink of being stayed and, indeed, they were stayed before the second walling order entered. *See* D.I. 230 (stipulation to stay).

In December of 2016, as these walling orders were being addressed in the DSL cases and just days before the MoCA cases were stayed, Jackson Walker ("JW") served a subpoena on Broadcom in the MoCA cases. The subpoena was mooted days later when the MoCA cases were indeed stayed. Nevertheless, the very next business day after receiving the subpoena, Broadcom put JW on notice that conflicts issues would have to be resolved, stating:

> I'm sure that you're aware that there was a motion to disqualify McAndrews in the DSL cases that ***everyone understood was applicable to the MoCA cases***, too. When the Court found that McAndrews had violated its ethical obligations, it ordered that separate conflicts counsel be used for Broadcom discovery (which I understand is now you). There is a pending dispute about the parameters within which conflicts counsel will operate. I suspect you already have copies of the parties' competing proposals, but I can send them to you if you don't. I'm confident that you don't want your interactions with the McAndrews firm or TQD's experts to taint your involvement, so you will want to be sure that you conform to Broadcom's proposal until the Court resolves the pending dispute. ***Broadcom reserves the right to address this issue when the MoCA cases come live again, if necessary***, although hopefully it will not be necessary to do so.

Ex. 2 (email from A. Tessar to W. Qureshi dated Dec. 19, 2016) (emphasis added). JW did not respond to this email at all, much less contest Broadcom's understanding that JW had been retained as conflicts counsel or that conflicts issues would need to be addressed.

For the past five years, the MoCA cases have been stayed and, at least as far as Broadcom knows, nothing has happened that relates to Broadcom. Instead, best as Broadcom can tell, the parties have been entirely focused on IPRs and related appeals.

3

The Court recently, in May of 2021, lifted the stay. JW then served a subpoena on Broadcom shortly thereafter. Broadcom again immediately reminded JW that conflicts issues would need to be addressed and, in its formal response to the subpoena, asked JW to confirm that it would be bound by the walling orders entered in the DSL cases. Exs. 3, 4. JW refused, the dispute escalated, and the parties submitted competing letter briefs to the Court regarding their relative positions. D.I. 279, 282. The Court then declined to resolve the parties' dispute in the context of letter briefs. D.I. 283.

Notably, it became apparent from the letter that TQD submitted to the Court last week that one reason for JW's refusal to agree to be bound by the walling orders is that McAndrews and JW had already acted inconsistently with those orders in 2016, despite the fact that they knew at the time about the ethical issues being litigated in the DSL cases. *See* D.I. 283 (TQD admitting "[i]n the first half of September 2016, TQ Delta and McAndrews had already begun work to bring Jackson Walker up-to-speed in the MoCA case.").

JW should have disclosed McAndrews' involvement to Broadcom in 2016. Nevertheless, given that there was only a small period of time before September 2016 and when the stay entered, and given that Broadcom has not yet produced any of its confidential information in the MoCA cases, Broadcom proposed a reasonable compromise: that JW, McAndrews, and TQD now agree to abide by the conflicts orders going forward. But they still would not agree.

Broadcom is therefore forced to bring this motion.

## II.   ARGUMENT

As the Court is well aware, TQD's DSL cases and its MoCA cases heavily overlap. Some of the same patents were asserted across the two sets of cases (at least at the outset), McAndrews serves as lead counsel to TQD in both cases, and, most importantly, both cases

4

target Broadcom chips that are incorporated into the defendants' accused products. When Broadcom moved to disqualify McAndrews in the DSL cases, TQD presented a full and vigorous defense, raising the best arguments that it could to defend McAndrews' behavior, all of which were carefully considered by the Court.

But TQD and McAndrews ultimately lost that motion. Walling orders were carefully considered by the Court, and then were entered after TQD and McAndrews had a full chance to be heard. Moreover, although Broadcom did not file its disqualification motions in the MoCA cases, which were at a different stage than the DSL cases at the time, it did present evidence regarding McAndrews' work on Broadcom's MoCA chips. *See, e.g.*, Ex. 1 at 35 ¶ 6 (Dreux Decl., listing both DSL and MoCA patents that McAndrews prosecuted for Broadcom). The Court's ultimate order acknowledged this, noting that McAndrews had prosecuted hundreds of patents on DSL *and* MoCA technologies for Broadcom. C.A. No. 13-1835, D.I. 238 at 9.

TQD and its counsel effectively operated under the walling orders in the DSL cases for years. For Broadcom's continued protection, it is entirely appropriate that those walling orders should be entered here. Indeed, TQD has not attempted to suggest that the reasoning that the Court followed to disqualify it in the DSL cases does not identically apply to the MoCA cases.

There also is no contention here that application of the walling orders to these MoCA cases would impose an unfair burden on TQD. TQD already retained separate conflicts counsel (JW) for the MoCA cases years ago and continues to use that separate counsel today—a sign that Broadcom understood then and now to mean that TQD realizes and acknowledges that the disqualification and walling orders from the DSL cases would apply to the MoCA cases. Indeed, if those orders were not to apply here, it is entirely unclear why TQD retained JW in the first place. Additionally, JW has taken the position that it is not currently "working under

5

direction/instruction of McAndrews," Ex. 5, further calling into question why the walling orders would impose any hardship.

TQD bases its opposition to entry of the walling order in this case on three arguments, none of which hold any water, and each of which are discussed below.

**A.      The Court Did Not Previously Issue A Decision On This Issue In The MOCA Cases**

TQD tries to tell this Court that it has already ruled that the walling orders should not apply in the MoCA cases. That is wrong.

In making this argument, TQD relies on a comment by the Court that is taken out of context. Specifically, the Court said, "Broadcom only seeks to disqualify McAndrews in the DSL Cases (D.I. 143)." D.I. 238 (C.A. No. 18-1835). Preliminarily, this hardly precludes the Court from entering the walling orders in these MoCA cases now that Broadcom is asking the Court to do so. Moreover, a review of D.I. 143 in C.A. No. 13-1835, and its accompanying memorandum at D.I. 144, also calls into question the merits of TQD's point. Broadcom specifically submitted evidence demonstrating that McAndrews was involved in the prosecution of both Broadcom's MoCA patents and its DSL patents. *See, e.g.*, Ex. 1 at 35 ¶ 6(Dreux Decl., listing both DSL and MoCA patents that McAndrews prosecuted for Broadcom). And the Court noted in its order that Broadcom had submitted such documents. C.A. No. 13-1835 at D.I. 238, 3 n. 3. Further, tracing the Court's comment to its source shows that Broadcom merely stated, "Additionally, as the Court is aware, there are multiple 'MoCA' cases that TQD recently filed against other Broadcom customers. To date, McAndrews has refused to tell Broadcom whether TQD's infringement theories in those cases are standards-based or based on Broadcom implementations." This is hardly compelling evidence that the Court has already decided that the DSL walling orders should not apply here.

If nothing else, the doctrines of res judicata and collateral estoppel dictate that the Court should apply similar conflicts orders here. *See Chariot Plastics, Inc. v. U.S.*, 28 F.Supp.2d 874, 881 (S.D.N.Y. 1998) (declining to revisit prior court decisions on attorney ethics, noting that "res judicata and collateral estoppel are important doctrines that reduce the burden of litigation by precluding multiple lawsuits, conserving judicial resources, and encouraging reliance on adjudication by preventing inconsistent decisions"). Further, the Court has wide discretion to issue "conflicts counsel" orders to address ethical issues in the cases before it, as this Court did in the DSL cases. *See High Point SARL v. Sprint Nextel Corp.,* 280 F.R.D. 586, 589 (D. Kan. 2012) (ordering "conflicts counsel" take all discovery from Motorola); *In re Enron Corp.*, No. 02 CIV. 5638 (BSJ), 2003 WL 223455, at *9 (S.D.N.Y. Feb. 3, 2003) (finding that "the use of conflicts counsel and ethical walls are appropriate").

B. **TQD Has Now Confirmed That Its Infringement Theories Are Entirely Standards-Based, But They Have Also Served A Subpoena That Seeks Broadcom Confidential Information**

TQD argues, correctly, that Broadcom previously emphasized in the DSL cases that conflicts issues would be less concerning if TQD's infringement theories are standards-based. TQD then also, at long last, confirms that its MoCA infringement theories are, indeed, standards-based.[2]

But for the fact that Broadcom has seen the subpoena from TQD in these MoCA cases, that commitment might have resolved Broadcom's concerns. Broadcom had expected, and still expects, that a standards-based infringement read does not require proof of Broadcom's specific implementations of the MoCA standards. Indeed, the very reason that patentees rely on

---

[2] TQD could have, but did not, commit that it will not change its theories to focus on specific Broadcom implementations at some later point in the case.

7

standards-based infringement theories is generally to ease the burden of proving a defendants' specific implementations.

But TQD's subpoena to Broadcom in this case does not follow this pattern. Instead, the subpoena sweepingly seeks a long list of highly confidential documents and source code regarding Broadcom's specific product designs and features—requests that implicate the very types of Broadcom information that necessitate entry of the walling orders here. These requests include, for instance, requests for "[a]ll Technical Documents relating to any Broadcom MoCA Product …" (RFP #3), "a representative set of Technical Documents for each … Broadcom MoCA Product that relate to, describe, or specify the MoCA Functionality" (RFP #4), "all Source Code … relating to MoCA Functionality" for "each Broadcom MoCA Product" (RFP #6), "all Documents … relating to the Source Code requested …" (RFP #7), "each agreement relating to any actual and/ or potential duty … on Broadcom's part to defend, indemnify, and/or hold harmless any OEM or other entity …" (RFP #11), "[a]ll communications between, among, to, or from Broadcom, MoCA, a MoCA Member, and/or any OEM …" (RFP #14), "[a]ll Documents … relating to any communication between any Broadcom employee and any MoCA Member relating to the Accused MoCA Functionality…." (RFP #17). Ex. 6.

Not only that, but TQD has already demanded an "initial" list of documents that it needs before, it says, it can even confer on the subpoena, including things like "[t]echnical/testing documentation relating to interoperability/compliance of chips with the MoCA standard(s) …" and "[c]hip source code and source code documentation relating to MoCA Functionality …." *See* Ex. 5.

These types of sweeping, intrusive, and implementation-specific requests simply could not have been reasonably anticipated by Broadcom for a standards-based case at the time of the

8

DSL disqualification briefing.[3] Regardless, however, they amply demonstrate the reasons that TQD's commitment that its infringement theories are standards-based does not resolve Broadcom's concerns about the walling orders.

### C. Broadcom's Motion Is Timely

TQD's claim that Broadcom has waited "almost 6 years after the MoCA case[s] were filed" (D.I. 283 at 3) ignores the facts. Broadcom has always been transparent that there were potential conflicts issues in the MoCA cases, but then the cases were stayed for nearly five years. Indeed, the stay was entered on December 20, 2016 (D.I. 232), two weeks **before** the Court entered its final order on conflicts procedures on January 6, 2017. C.A. No. 13-1835, D.I. 254.

In addition to making clear in its original briefing in the DSL cases that the conflicts issues applied to the MoCA cases, as discussed above, Broadcom emailed TQD's counsel at JW to make clear its expectations that JW would comply with the conflicts orders and to expressly state that "Broadcom reserves the right to address this issue when the MoCA cases come live again, if necessary, although hopefully it will not be necessary to do so." Ex. 2. JW did not even respond.

The stay continued for nearly five years, *see, e.g.,* D.I. 232, until the MoCA cases recently came alive again. Broadcom then acted promptly to raise the conflicts issues. *See* Ex. 2 (email to TQD's counsel noting conflicts issues), Ex. 4 (excerpts of objections to subpoena outlining conflicts issues), and D.I. 279 (raising this issue to the Court). The Court previously acknowledged that McAndrews' "direct conflict" in seeking Rule 45 discovery from Broadcom

---

[3] Indeed, they seem designed to harass more than for any legitimate purpose in the case—an issue that this Court obviously cannot resolve, as it is not the compliance court. *See* C.A. No. 13-1835 D.I. 322 at 3 (denying TQD's motion to compel because "Plaintiff must move for compliance with the subpoena in the United States District Court for the Central District of California").

9

"differs in character from the preexisting conflicts which related to McAndrews' representation of TQD" and thus the focus of the timing should be on the service of the subpoena, not TQD's earlier filing of the case. *See* C.A. No. 13-1835, D.I. 238 at 12. Here, when the stay is factored in, it is still merely weeks after TQD served its subpoena on Broadcom that Broadcom brings this motion, and any argument that Broadcom is untimely should be rejected. Furthermore, "the passage of time does not dilute the significance of the confidences provided" by Broadcom to McAndrews, such that TQD should be free to allow JW to operate in concert with McAndrews. *See Nasdaq, Inc v. Miami Int'l Holdings, Inc.*, No. CV 17-6664-BRM-DEA, 2018 WL 6171819, at *5 (D.N.J. Nov. 26, 2018). An ethical wall here is the minimum appropriate to ensure Broadcom is adequately protected from potential harm from its former counsel.

### III. TQD's Proposal Is Insufficient

TQD proposes that it will commit that "McAndrews has not shared and will not share with JW any Broadcom confidential information … from its prior representation of Broadcom many years ago." As a solution, this is grossly insufficient. It requires Broadcom to trust that the lawyers who have been found to have violated their ethical responsibilities will now belatedly act in Broadcom's best interests. Indeed, this approach would permit McAndrews lawyers to "assist" JW's enforcement of the subpoena by telling it what documents to request, how to understand those documents, what confidential information is in Broadcom's files, and where experts should focus. To say that this approach would give TQD an unfair advantage in this litigation is to put it mildly. Such a result would do a gross disservice to Broadcom, which has already been wronged by McAndrews' breaches of its ethical obligations. *See Nasdaq, Inc v. Miami Int'l Holdings, Inc.*, No. CV 17-6664-BRM-DEA, 2018 WL 6171819, at *6 (D.N.J. Nov. 26, 2018) (ordering disqualification of a law firm who served as former counsel to an adverse

party because it was "familiar with [a party's] strategic approaches to managing its technology and inventions" and "is responsible for creating its own conflict in this case by choosing to represent" a party where a conflict existed).

### IV. CONCLUSION

There is no question that McAndrews has "violate[d] Rule [of Professional Conduct] 1.9." *See* C.A. No. 13-1835, D.I. 238. The only question is whether the walling orders in the DSL cases should also be entered here. TQD's only arguments on why these orders should not be entered fall flat, and Broadcom has been reasonable in attempting to reach compromise, even though it is Broadcom who is the aggrieved party here. Broadcom respectfully requests that the Court order that the walling orders that it entered in the related DSL cases, C.A. No. 13-1835, D.I. 238, 239, and 254, are also entered in these MoCA cases.

| | |
|---|---|
| | */s/ Christine D. Haynes* |
| | Jeffrey L. Moyer (#3309) |
| OF COUNSEL: | Christine D. Haynes (#4697) |
| | Richards, Layton & Finger, P.A. |
| Amanda Tessar | One Rodney Square |
| Perkins Coie LLP | 920 N. King Street |
| 1900 Sixteenth Street, Suite 1400 | Wilmington, DE 19801 |
| Denver, CO 80202-5255 | (302) 651-7508 |
| (303) 291-2300 | haynes@rlf.com |
| ATessar@perkinscoie.com | |
| | *Attorneys for Broadcom Corporation* |
| Elizabeth M. Manno* | |
| Venable LLP | |
| 600 Massachusetts Avenue NW | |
| Washington, DC 20001 | |
| emmanno@venable.com | |
| *Admitted in Colorado, Florida, and North Carolina only | |

Dated: July 6, 2021