**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| TQ DELTA, LLC, <br><br> Plaintiff, <br><br> v. <br><br> COMCAST CABLE COMMUNICATIONS LLC, <br><br> Defendant. | C.A. No. 15-cv-611-RGA <br><br> **FILED UNDER SEAL** |
| TQ DELTA, LLC, <br><br> Plaintiff, <br><br> v. <br><br> COXCOM LLC and COX COMMUNICATIONS INC., <br><br> Defendants. | C.A. No. 15-cv-612-RGA <br><br> **FILED UNDER SEAL** |
| TQ DELTA, LLC, <br><br> Plaintiff, <br><br> v. <br><br> DISH NETWORK CORPORATION, DISH NETWORK L.L.C., DISH DBS CORPORATION, ECHOSTAR CORPORATION and ECHOSTAR TECHNOLOGIES, L.L.C., <br><br> Defendants. | C.A. No. 15-cv-614-RGA <br><br> **FILED UNDER SEAL** |
| TQ DELTA, LLC, <br><br> Plaintiff, <br><br> v. <br><br> TIME WARNER CABLE INC. and TIME WARNER CABLE ENTERPRISES LLC. <br><br> Defendants. | C.A. No. 15-cv-615-RGA <br><br> **FILED UNDER SEAL** |

| | |
|---|---|
| TQ DELTA, LLC,<br><br>                Plaintiff,<br><br>   v.<br><br>VERIZON SERVICES CORP.,<br><br>                Defendant. | C.A. No. 15-cv-616-RGA<br><br>**FILED UNDER SEAL** |

## PLAINTIFF'S OPENING LETTER BRIEF REGARDING
## SUPPLEMENTAL LAWSON REPORT

Date: September 26, 2022

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, Delaware 19801
(302) 777-0300
(302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Peter J. McAndrews (admitted *pro hac vice*)
Thomas J. Wimbiscus (admitted *pro hac vice*)
Rajendra A. Chiplunkar (admitted *pro hac vice*)
MCANDREWS, HELD & MALLOY, LTD.
500 West Madison Street, 34th Floor
Chicago, Illinois 60661
(312) 775-8000
(312) 775-8100 (Fax)
pmcandrews@mcandrews-ip.com
twimbiscus@mcandrews-ip.com
rchiplunkar@mcandrews-ip.com

*Counsel for Plaintiff TQ Delta, LLC*

Dear Judge Andrews:

Plaintiff TQ Delta, LLC requests leave to supplement its damages expert reports in a manner consistent with Special Master Order Nos. 21 and 22. Although contrary to the intent of SMO #21, it left TQ Delta with incomplete damages expert reports that, for some defendants, have no calculated royalty rate. A fundamental premise of SMO #21 is that TQ Delta's Reports "set[] forth and contemplate[] alternative damages that are not subject to the Motion and that TQ Delta can rely upon." *See* D.I. 498 at 26-27.[1] In its objections (D.I. 509 at 7-8), TQ Delta submitted that the premise of SMO #21 is erroneous; as DISH's expert submits, given the ruling of of SMO #21,"there is no remaining [TQ Delta] damages opinion to rebut at this time." Ex. A at ¶ 14. TQ Delta sought both clarification and leave to supplemental its reports from the Special Master, but the Special Master found that he lacked the authority to grant such relief and suggested that such relief must be taken up with Your Honor. Ex. B.  Exhibits E-I hereto are excerpts of the proposed supplemental reports showing proposed changes.[2]  Defendants oppose this request.

**Background:**  TQ Delta served the original damages reports of Ms. Catharine Lawton on May 12, 2022 ("Reports").  On June 17, 2022, Defendants filed a motion to strike, arguing that the Reports rely on theories and information different from what TQ Delta disclosed in its interrogatory responses and initial disclosures. D.I. 476. The Special Master issued an order on August 11, 2022 (D.I. 492) granting Defendants' motion in part. One issue before the Special Master related to a calculation in the Reports that relied on certain inputs, some of which SMO #21 deemed timely and others of which were deemed untimely. In particular, the calculation used data involving a license from non-party DirecTV wherein a $1.00 DirecTV-TiVo royalty rate was the numerator and a $5.00 DirecTV DVR service fee was the denominator.  Additionally, the Reports for DISH and Cox relied on a $3.00 DirecTV "whole home" DVR service fee in another part of the formula as a proxy for Defendant-specific whole home DVR service fees. But for Comcast, TWC, and Verizon, the Reports relied on Defendant-specific whole home DVR fees for that part of the formula. SMO #21 found that while the $1.00 DirecTV-TiVo royalty fee was timely disclosed,[3] the DirecTV service fees were not adequately disclosed.  *See* D.I. 498 at 17-18.

TQ Delta informed the Special Master that deleting the DirecTV service fees from the Reports would result in a series of "holes" in the Reports and render certain opinions unclear, such that some of the reports arguably "lack[] clear readability and … any clear royalty rate number." Ex. C, at 1. For the DISH and Cox reports, the parties understand that the ruling would leave TQ Delta without a calculated reasonable royalty rate (and only limited ways to arrive at a calculated royalty in the Reports for TWC, Comcast, and Verizon). *See* Ex. C, 2, n.2. TQ Delta therefore asked the Special Master for clarification and/or leave to replace the stricken DirecTV service fee

---

[1] Unless otherwise indicated, citations herein will be to the record in C.A. No. 15-611.

[2] TQ Delta provided Defendants with proposed supplemental reports on September 12, 2022. On September 15, 2022, TQ Delta served the non-DISH Defendants with modified versions of the supplemental reports that included a limited number of additional deletions and replacements. Most of the additional changes (redlined) are deletions per SMO #22. However, because defendants objected to the replacement text and asserted that they had insufficient time to respond, TQ Delta withdrew its prior motion and refiled to accommodate defendants' stated concerns.

[3] SMO #21 found that TQ Delta had disclosed the $1.00 DirecTV-TiVo rate cited in a 2006 trial transcript for a case between TiVo and EchoStar/DISH. D.I. 498 at 15-17.

information with (1) industry service fee information previously disclosed by TQ Delta and/or (2) Defendant-specific service fee information, consistent with SMO #21. Ex. C, at 1. (In denying Defendants' motion in part, SMO #21 reasoned that "to the extent any specific financial data of a defendant was not specifically disclosed in the November-December Disclosures, the Special Master does not find this prejudicial[] given that such data is Defendants' own financial information already in Defendants' possession." D.I. 498 at 20.) The Special Master responded that he lacked authority to grant leave because it involved scheduling issues for the Court. Ex. B.

TQ Delta therefore asks the Court for leave to serve supplemental reports. In the proposed supplemental reports, Ms. Lawton has addressed the holes in the original Reports created by SMO #21 in a manner consistent with SMO #21 (and TQ Delta's November-December Disclosures). First, the supplemental reports use the TiVo-Echostar/DISH royalty rate for standard DVR. SMO #21 noted that TQ Delta's cite to the *TiVo v. EchoStar* trial transcript for details concerning that royalty rate was appropriate. D.I. 498 at 7 ("TQ Delta further provided details behind TiVo's expert damages calculation…. This discussion referenced and cited the trial transcript from the *TiVo v. EchoStar* litigation."); *see also*, e.g., Ex. D at 54. Second, all references to the stricken DirecTV service fees have been removed. Instead, each supplemental report uses exclusively defendant-specific information for whole home DVR service fees. Third, consistent with the Disclosures, the supplemental reports use the same and very similar formulas for apportioning the value of TQ Delta's patents. In the supplements, the TiVo-Echostar/Dish royalty rate is divided by the EchoStar/Dish standard DVR fees (disclosed in the cited litigation transcript). *See, e.g.,* Ex. E at ¶ 1189; Ex. F at ¶ 1239; Ex. G at ¶ 1202; Ex. H at ¶ 1129; Ex. I at ¶ 1390. Then, that figure is multiplied by Defendant-specific whole home DVR service fees. *Id*. This is mathematically the same as multiplying the royalty rate by a ratio of whole home DVR service fees to standard DVR service fees, as referenced in TQ Delta's Disclosures, i.e., (R/Std fees) x WH fees = R x (WH fees/Std fees).[4] As an alternative, the supplemental reports provide a similar apportionment formula that multiplies the subject royalty rate by the ratio of Defendant-specific whole home DVR service fees to Defendant-specific standard DVR service fees, i.e., R x (WH fees/Std fees). E.g., Ex. E at ¶ 1264, Ex. F at ¶ 1313, Ex. G at ¶ 1275; Ex. H at ¶ 1201; Ex. I at ¶ 1470.

**Legal Standard:** Rule 37(c)(1) permits a party to supplement its expert report if the supplementation is "substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). As this Court has previously held, "evidence should be excluded sparingly and only in circumstances involving litigation conduct that is clearly unprofessional or inappropriate . . . ." *Novartis Pharms. Corp. v. Actavis, Inc.*, No. 12-366-RGA-CJB, 2013 U.S. Dist. LEXIS 182148, at *21-22 (D. Del. Dec. 23, 2013). In considering a motion for leave to supplement, district courts weigh "the *Pennypack* factors." *See Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3rd Cir. 1977). Supplementation should generally be allowed unless there was "willful deception or

---

[4] TQ Delta's Disclosures provided, among other things, a formula to apportion for the value of TQ Delta's patents-in-suit. This apportionment used an established royalty rate for TiVo's standard DVR technology as a starting point, and then adjusted that figure to account for differences in technology and economics between standard DVR and whole home DVR. This was done by multiplying the TiVO- EchoStar/Dish standard DVR royalty rate ("R") by a ratio of defendant-specific whole home DVR fees ("WH fees") to those of defendant-specific standard DVR fees ("Std fees"), i.e., R x (WH fees/Std fees). Ex. J (Nov. Dish Disclosure excerpts) at p. 94-95; *see similar* at Exs. K pp. 105-106; L at pp. 93-94; M at pp. 101-102; N at pp. 99-101.

flagrant disregard of a court order by the proponent of the evidence." *Novartis*, 2013 U.S. Dist. LEXIS 182148, at *22. "[T]he exclusion of critical evidence is an 'extreme' sanction," *Pennypack*, 559 F.2d at 905, and "[i]n utilizing the *Pennypack* analysis, 'Courts favor the resolution of disputes on their merits.'" *Callwave Commc'ns, L.L.C. v. AT&T Mobility LLC*, No. 12-cv-01701-RGA, 2015 U.S. Dist. LEXIS 169183, at *7 (D. Del. Dec. 10, 2015). Moreover, exclusion "should not be imposed where an untimely or improper expert disclosure amounts to only a 'slight deviation from pretrial notice requirements' or occasions only 'slight prejudice.'" *W.L. Gore & Assocs. v. C.R. Bard, Inc.*, No. 2015 U.S. Dist. LEXIS 191654, at *10 (D. Del. Sep. 25, 2015).

**Argument:** All *Pennypack* factors favor allowing supplementation. First, the theories in the supplemental Reports are unquestionably important to TQ Delta's case, and this Court has repeatedly recognized the importance of a party being able to put forward a damages theory at trial. *See*, *e.g.*, *Acceleration Bay LLC v. Activision Blizzard Inc.*, No. 1:16-cv-00453-RGA, 2017 U.S. Dist. LEXIS 228867, at *14 (D. Del. Nov. 7, 2017); *Zimmer Surgical, Inc. v. Stryker Corp.*, 365 F. Supp. 3d 466, 499 (D. Del. 2019). In *ZF Meritor, LLC v. Eaton Corp.*, the Third Circuit held that "perhaps the most important factor" in its decision that denial of Plaintiffs leave to supplement its expert's damages report was an abuse of discretion was "the critical nature of the evidence[] and the consequence if permission to amend [was] denied." 696 F.3d 254, 299 (3rd Cir. 2012). Absent leave, TQ Delta will be forced to rely on reports with significant holes in them, some with no calculated royalty rate Ex. A at ¶ 14("there is no [] damages opinion to rebut at this time." (For Dish and Cox, the formula is missing a multiplier, and for all cases, a denominator.)

*Pennypack* factors 1 and 2 also favor supplementation. Defendants cannot claim they are surprised or prejudiced by anything in the supplemental Reports or by TQ Delta seeking leave to serve them. The supplemental Reports do not propose new damages theories; rather, they address holes created by SMO #21 with types of information that SMO #21 found was adequately disclosed to Defendants (*i.e.*, information from previously disclosed TiVo-EchoStar/DISH trial record and/or Defendant-specific service fee information). Defendants therefore cannot complain that the supplemental Reports include information on which Defendants did not have the opportunity to take discovery. Nor can there be prejudice using defendants' own information. Accordingly, Defendants are not prejudiced, but, even if they were, the alleged prejudice is curable. In the amended case schedule (D.I. 522) and proposed schedule for Dish (D.I. 479, Defendants will have an opportunity to serve a rebuttal report and depose Ms. Lawton. *See Acceleration Bay,* 2019 U.S. Dist. LEXIS 150851, at *22 ("[T]o the extent that [the] report prejudiced Defendant at all, [it] has been cured by expert depositions and ample time to prepare for trial on the new theories.").

Moreover, no trial date has been set. Granting TQ Delta's motion will therefore not result in any disruption of a trial schedule. *See Insight*, 2016 U.S. Dist. LEXIS 164742, at *4 ("This is not a case where Plaintiff seeks a second bite at the apple on the eve of trial [] trial is not scheduled for seven months. That is ample time to allow Plaintiff prepare an alternative damages theory and for Defendant to test it."). Lastly, there was no bad faith. The Disclosures did not intentionally hide theories; rather, the original Reports provided additional or alternative data points consistent with the theories and formulas of the Disclosures. Further, TQ Delta worked diligently to seek clarification from the Special Master, avoid submission of expert reports pending objections to SMO #21 via stipulations, and moved to modify the scheduling order and for leave to supplement.

**Conclusion:** For the foregoing reasons, TQ Delta requests the Court grant its motion for leave.

                Respectfully submitted,

                /s/ Brian E. Farnan

                Brian E. Farnan

cc: Counsel of Record (via E-mail)