IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TQ DELTA LLC, | : | |
| Plaintiff, | : : : | |
| v. | : | Civil Action No. 15-611-RGA |
| COMCAST CABLE COMMUNICATIONS LLC, | : : : : | |
| Defendant. | : | |

| | | |
|---|---|---|
| TQ DELTA LLC, | : : | |
| Plaintiff, | : : : | |
| v. | : : | Civil Action No. 15-612-RGA |
| COXCOM LLC, et al., | : : | |
| Defendants. | : | |

| | | |
|---|---|---|
| TQ DELTA LLC, | : : | |
| Plaintiff, | : : : | |
| v. | : : | Civil Action No. 15-614-RGA |
| DISH NETWORK CORPORATION, et al., | : : | |
| Defendants. | : | |

| | |
|---|---|
| TQ DELTA LLC, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 15-615-RGA |
| TIME WARNER CABLE INC., et al., | : |
| Defendants. | : |

| | |
|---|---|
| TQ DELTA LLC, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 15-616-RGA |
| VERIZON SERVICES CORP., | : |
| Defendant. | : |

## MEMORANDUM ORDER

Defendants filed a motion to strike and exclude various of Plaintiff's damages theories on the basis that they were late disclosed. (D.I. 476).[1] The Special Master ("SM") filed Special Master Order ("SMO") #21, which resolved the motion, partially in favor of Plaintiff and partially in favor of Defendants. (D.I. 492). Both sides filed objections (D.I. 509, 511), and both sides filed responses (D.I. 525, 527). I now resolve the objections.

---

[1] Citations are only to the docket in No. 15-611-RGA.

Defendants' objections are that the SM abused his discretion in ruling that Plaintiff had timely disclosed two damages theories.[2] (D.I. 511). The first theory requires inputs for "(1) the costs incurred by Defendants to purchase the accused devices and (2) the associated fees they charge their customers to lease these devices." (*Id.* at 5). The second theory requires an input for Defendants' "weighted average cost of capital." (*Id.* at 7). As I read the objections, they are not that Plaintiff did not disclose the theories, but that Plaintiff identified different sources for the inputs. For the reasons stated by the SM, I conclude the Plaintiff's disclosures were adequate.

Even if I disagreed with the SM on the adequacy of disclosure, I would nevertheless overrule the objections. A court has discretion whether to exclude evidence when it has not been disclosed in compliance with the rules. Here, there is no substantial prejudice to Defendants.[3]

On the first damages theory, Defendants have full and unfettered access to their own costs and fees. Their expert(s) can make whatever calculations and/or estimates are necessary to dispute Plaintiff's expert's analysis.

On the second damages theory, Defendants argue that the Bloomberg source for weighted average cost of capital is a "black box" and unreliable.[4] (D.I. 511 at 8). Defendants can make a *Daubert* challenge, if they wish, at the appropriate time. Defendants can raise the same

---

[2] The two theories are referred to as "Excess Profits Associated with the Higher Return on Investment in Lower Cost Client Hardware" and "Working Capital Cost Savings Associated with Whole-Home DVR." (D.I. 492 at 19-20; *see* D.I. 511 at 5, 7; D.I. 525 at 5, 7).

[3] One of the critical factors in the *Pennypack* analysis is prejudice. *See Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1977); *see also Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719-20 (3d Cir. 1997). None of the other factors, individually or as a whole, counsels a different result here.

[4] Plaintiff, in its response, states that Defendants did not raise this specific argument before the SM. (D.I. 525 at 8). Since there was no opportunity for Defendants to respond to this statement, I only note, if Plaintiff is correct, that would be another reason to reject Defendants' argument.

reliability issues at trial if unsuccessful with *Daubert*. And, if the argument is anything other than a makeweight,[5] Defendants' experts can make their own calculations of weighted average cost of capital. Thus, I will overrule Defendants' objections.

Plaintiff objects that the SM erred in excluding Plaintiff's damages theory that the parties refer to as the "Splitting of Differential Revenue Attributable to Whole-Home DVR ARPU [Average Revenue per Unit] per Month." (D.I. 492 at 8; D.I. 509 at 4 & n.3).[6]

The SM found that Plaintiff did not adequately disclose that the inputs to its formula for calculating the "Splitting of Differential Revenue" theory would be based on information related to DirecTV's service fees (which also involve Tivo), neither of which are Defendants in these cases (or any other cases Plaintiff has brought). (D.I. 492 at 17-18). The SM found that any reliance on DirecTV's service fees was not disclosed. (*Id.* at 17). In its objections, Plaintiff states that the DirecTV service fee was disclosed because an expert referred to it in the testimony during the *Tivo v. DISH/Echostar* trial in 2005. Plaintiff says its disclosures "cited the specific, public record trial transcript" disclosing the service fee, citing one page. (D.I. 509 at 7). Plaintiff's Appendix provides a different picture. In its disclosures, Plaintiff does cite the trial transcript, which is about 150 pages long at the cited docket item (#709), but it does not cite any particular page of the 150 pages, and it does not cite it in reference to the proposition for which Plaintiff now says the citation disclosed. (D.I. 510 at A10). It is only a slight exaggeration to

---

[5] I do not understand Defendants to be asserting that they would be able to depose Bloomberg about its sources of information (or conjecture). Defendants would be no better off had the Bloomberg source been timely disclosed.

[6] The SM excluded a second theory that is referred to as "Excess Profits Associated with the Higher Return on Investment in Lower Cost Client Hardware." (D.I. 492 at 8, 18-19). Unlike the "Splitting of Differential Revenue" theory, which Plaintiff specifically mentions five times in its objections (D.I. 509 at 4, 5, 6, 7, and 10), Plaintiff does not mention the "Excess Profits" theory in its objections.

say that it is the equivalent of saying, here's a haystack that contains a valuable Denver-mint quarter, and then complaining when the listener does not find and recognize the importance of the Philadelphia-mint quarter that was also in the haystack. In short, I agree with the SM that the DirecTV service fee and its importance to Plaintiff's theory were undisclosed.[7]

Plaintiff also argues that it did not rely upon the DirecTV service fee for three of the five cases (*i.e.*, 15-611/615/616). The SM found to the contrary, citing to the record. (D.I. 492 at 17). It does not appear that the parties have provided me with the pages the SM cited.[8] Instead, Plaintiff cites one paragraph of one page, stating that the page shows that the "WH DVR service fee" for Comcast is based upon Comcast specific information. (D.I. 509 at 7, citing D.I. 510 at A21 (¶ 1241)). I do not see anything replying to this particular assertion in Defendants' response. And I am not sure entirely sure that the SM struck this. SMO #21, perhaps recognizing that the parties' briefing could only go so far when dealing with five 1000-page expert reports, concluded by seeking the parties' input as to the exact effect of what he had struck. (D.I. 492 at 27 ("all portions of [Plaintiff's] damages theories . . . that rely upon or are based upon . . . DirecTV's monthly service fees [are excluded].")). The parties were directed to meet and confer and identify what had been stricken and what had not been stricken. The

---

[7] Here, again, Defendants argue that Plaintiff did not claim the "disclosure" of the DirecTV service fee before the SM. (D.I. 527 at 4). Plaintiff does not point out anywhere in which it made this specific argument to the SM, and the SM did not address it, so it appears that Defendants might be correct. I reviewed portions of the oral argument before the SM, and I saw that Plaintiff kept citing to the disclosures at 94-95. (*E.g.*, D.I. 494 at 118). Plaintiff's best citation would be to page 98 (D.I. 510 at A10), but the concordance to the argument reveals no citation to that page. In the end, at argument, Plaintiff did not cite what it now cites. Thus, it seems likely Plaintiff's argument is procedurally barred. (D.I. 527 at 4 n.3). But I do not rely upon this reasoning since Plaintiff did not have a chance to respond to it.

[8] I searched the logical places where such filings would be—D.I. 510, 511, 526, and 527—and they are not there.

parties extended that deadline to August 25th. (D.I. 497). It appears that the parties (perhaps reasonably) had difficulty accomplishing this. (D.I. 501 at 7-8; D.I. 507 at 3). In Special Master Order #22, after briefing from the parties, the Special Master itemized the portions of the expert reports that he was excluding. No objections have been taken from SMO #22, and the time to take objections has passed.

The SM conducted a *Pennypack* analysis in connection with the exclusion of the Splitting of Differential Revenue theory. (D.I. 492 at 23-27). Plaintiff now complains about that, arguing, for example, that it was erroneous for the SM to conclude Plaintiff had alternate theories, thereby diminishing the importance of excluding the Splitting of Differential Revenue theory. But in its briefing, Plaintiff never said that. All it said was that the theory was "unquestionably important" or "vitally important," with no factual support at all, just legal citations. (D.I. 527-1 at 15; D.I. 527-2 at 5). It is hard to fault the SM for not addressing arguments that were not made, and it is too late for Plaintiff to be making them to me now. Based on the record presented to the SM, he made the right decision. Thus, I will overrule Plaintiff's objections.

Plaintiff has taken another shot at repairing the damage it has done to itself, asking to be allowed to supplement its expert reports in certain regards. (D.I. 536; D.I. 541). Ruling on those letters is an issue for another day.

In conclusion, all objections (D.I. 509, 511) are **OVERRULED**; Special Master Order #21 (D.I. 492) is **ADOPTED** over objection; Special Master Order #22 (D.I. 507) is **ADOPTED** without objection; and the motion to strike (D.I. 476) is **GRANTED** in part and **DENIED** in part.

IT IS SO ORDERED this 11th day of October 2022.

/s/ Richard G. Andrews
United States District Judge