IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TQ DELTA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 15-611 (RGA) |
| | ) | |
| v. | ) | **REDACTED - PUBLIC VERSION** |
| | ) | |
| COMCAST CABLE COMMUNICATIONS LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| TQ DELTA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 15-612 (RGA) |
| | ) | |
| v. | ) | **REDACTED - PUBLIC VERSION** |
| | ) | |
| COXCOM LLC and COX COMMUNICATIONS INC., | ) | |
| | ) | |
| Defendants. | ) | |
| TQ DELTA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 15-614 (RGA) |
| | ) | |
| v. | ) | **REDACTED – PUBLIC VERSION** |
| | ) | |
| DISH NETWORK CORPORATION, DISH NETWORK L.L.C., DISH DBS CORPORATION, ECHOSTAR CORPORATION, and ECHOSTAR TECHNOLOGIES, L.L.C. | ) | |
| | ) | |
| Defendants. | ) | |
| TQ DELTA, LLC, | ) | |
| | ) | C.A. No. 15-615 (RGA) |
| Plaintiff, | ) | |
| | ) | **REDACTED - PUBLIC VERSION** |
| v. | ) | |
| | ) | |
| TIME WARNER CABLE INC. and TIME WARNER CABLE ENTERPRISES LLC, | ) | |
| | ) | |
| Defendants. | ) | |

|                                   |   |                          |
|-----------------------------------|---|--------------------------|
| TQ DELTA, LLC,                    | ) |                          |
|                                   | ) |                          |
|     Plaintiff, | ) | C.A. No. 15-616 (RGA)    |
|                                   | ) |                          |
| v.                                | ) | **REDACTED – PUBLIC VERSION** |
|                                   | ) |                          |
| VERIZON SERVICES CORP.,           | ) |                          |
|                                   | ) |                          |
|     Defendant. | ) |                          |

**LETTER TO THE HONORABLE RICHARD G. ANDREWS FROM DEFENDANTS IN OPPOSITION TO PLAINTIFF TQ DELTA'S MOTION FOR LEAVE TO SUPPLEMENT THE LAWTON REPORTS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com

*Attorneys for Defendants Comcast Cable Communications LLC, CoxCom LLC, Cox Communications Inc., Time Warner Cable Inc., and Time Warner Cable Enterprises LLC*

GREENBERG TRAURIG, LLP
Benjamin J. Schladweiler (#4601)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
(302) 661-7352
schladweilerb@gtlaw.com

*Attorneys for Defendant Verizon Services Corp.*

FISH & RICHARDSON P.C
Nitika Gupta Fiorella (#5898)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
(302) 652-5070
fiorella@fr.com

*Attorneys for Defendants DISH Network Corporation, DISH Network L.L.C., DISH DBS Corporation, and EchoStar Corporation*

**Original Filing Date: October 4, 2022**
**Redacted Filing Date: October 11, 2022**

TQ Delta's ("TQ") request for a damages do-over via "supplemental" reports should be denied. TQ has willfully and repeatedly ignored Rule 26, the Court's Schedule, and SMO No. 6. While TQ's reports contain "significant holes in them, some with no calculated rate" (D.I. 536 at 3),[1] TQ is "alone to blame for creating this situation." *MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1357 (Fed. Cir. 2005) (affirming exclusion of late damages theories). It should not be permitted to make a virtue of its own, repeated wrongdoing. Moreover, TQ delayed its new 1,000+ page reports for months, withholding them until 9/12 (the date of its originally-filed letter brief, D.I. 526), and then serving still different versions to some Defendants on 9/15, causing TQ to withdraw its first letter brief (D.I. 528) and re-start this letter briefing process. Worse, TQ's supplements introduce *still more new theories* and evidence never disclosed during discovery or in response to SMO No. 6. The proposed supplements also improperly include opinions struck by SMO No. 22. Allowing the new reports would return the entire expert damages phase to square one, restarting motion practice to strike undisclosed theories. TQ's request should be denied.

**The *Pennypack* Factors Strongly Favor Denial of TQ's Request for Leave**

The Court has found TQ's many cases to be "sophisticated and complex" and the parties to be "represented by competent counsel," such that the Court is "more willing to exclude evidence without a strict showing that each of the *Pennypack* factors has been satisfied." *TQ Delta, LLC v. ADTRAN, Inc.*, 2020 WL 4529865, at *2 (D. Del. Jul. 31, 2020). And "based on the number of times [TQ has] taken identical actions"—ignoring the Court's Schedule and its obligation to timely disclose its theories—the Court has previously determined that it "would find TQ's actions to be in bad faith[.]" D.I. 517 at 4; *see also* D.I. 456 (denying motion for leave to add willfulness ("Plaintiff has not shown good cause for alter[ing] of the schedule, as all of what Plaintiff asserts was known to it, most of it long ago."); SMO No. 21 at 26 (TQ's "conduct suggests that [it] may take lightly or not recognize the importance of its obligations to supplement in a timely manner as required by Rule 26 and SMO No. 6"). TQ's history of failing to comply with deadlines—which amount "to be in bad faith"—justifies denial of its request to supplement. *See Withrow v. Spears*, 967 F. Supp. 2d 982, 1006 (D. Del. 2013) ("The Third Circuit has found a party to have violated a scheduling order willfully or in bad faith where the violation at issue was one in a line of violations … .") (collecting cases). Indeed, TQ's untimely disclosure was "[p]articularly troubling," and "failed to honor disclosure deadlines … ." SMO No. 21 at 26.

SMO No. 6 provided TQ with clear directions on what to disclose and when. SMO No. 21, at 24 ("[T]his was the exact situation the Special Master attempted to avoid when he ordered" TQ to disclose its damages theories). TQ ignored that Order. Instead, it introduced new facts and evidence in damages contentions served ten weeks after fact discovery closed, and just five days before TQ's expert reports, forcing Defendants and their experts to scramble to review and analyze TQ's new theories, buried within 1,000+ page reports. Now, having violated SMO No. 6, TQ seeks a second bite at the apple, which would require Defendants to incur still more fees and expert expenses in addressing yet more new theories.

While unnecessary to resolve this motion, the remaining *Pennypack* factors also favor denial. TQ's continually shifting damages theories have caused Defendants to collectively incur thousands of hours and hundreds of thousands of dollars in extra fees and expenses, both attorney and expert, and forced the Special Master to sift through thousands of pages of briefs and appendices. Allowing TQ to amend its reports, including to add a new "alternative calculation (*see* § II, *infra*), would nullify the work the parties (and the Special Master) undertook with SMO Nos.

---

[1]  Unless otherwise noted, all docket citations are to C.A. No. 15-611.

6, 21, and 22. This is true—and prejudice remains—even if some of the information TQ seeks to pivot to comes from Defendants. *Cf. Bridgestone Sports Co. Ltd. v. Acushnet Co.*, 2007 WL 521894, at *5 (D. Del. Feb. 15, 2007) ("Acushnet contends that Bridgestone will not be prejudiced, because the references it seeks to add are Bridgestone's references. However, Bridgestone's prior knowledge of these references does not excuse Acushnet's failure to timely disclose them."). The second and third factors also favor denial. While no trial date exists, TQ's amendments would necessarily require a re-do of Defendants' responsive expert reports (which DISH served and the other Defendants essentially were prepared to serve). They may also require further fact discovery in view of TQ's advancement of previously undisclosed theories, which would further prejudice Defendants due to the additional attorney and expert fees and costs incurred, solely due to TQ's refusal to follow Court orders. *See ADTRAN*, 2020 WL 4529865, at *2 ("Re-opening discovery to give Defendant an opportunity to cure the prejudice would only disrupt the schedule further.").

None of TQ's proposed supplements are so important that they should be allowed despite TQ's willful disregard of the Court's Orders and the inherent prejudice to Defendants. TQ's long delay in serving its new reports—and its false start via its first, withdrawn letter brief—also belies its claims of criticality. *See Opengate Cap. Grp. LLC v. Thermo Fisher Sci. Inc.*, 2016 WL 8488409, at *4 (D. Del. Feb. 1, 2016) (denying leave to supplement damages report; Plaintiff's delay to request supplementation "not only subverts the notion of its criticality, but also constitutes sufficient flouting of discovery deadlines by failing to conform to the Rule 26(e) requirement that a party's disclosures must be made 'in a timely manner'."). As to Comcast, TWC, and Verizon, SMO No. 22 permitted TQ to proceed with its 20% figure (albeit in a weakened state). For Cox and DISH, while TQ does not have a benchmark royalty or an ultimate royalty figure, it does not assert that it is unable to present any portion of Ms. Lawton's opinions or that it cannot "put on fact testimony giving the jury some basis for finding a reasonable royalty." *AVM Techs., LLC v. Intel Corp.*, 2017 WL 1753999, at *1 (D. Del. May 1, 2017) (noting that plaintiff could introduce "historical facts, such as how much AVM paid for the patent, what its licensing approach was … ."). The sheer magnitude of TQ's transgression cannot be bootstrapped into a reason to excuse it.

## I.     TQ Cannot Justify Its Request Under Rule 26(e)

TQ's attempt to rewrite Ms. Lawton's reports is not a proper supplementation under Rule 26(e). "Courts have repeatedly emphasized the limited scope of supplementation permitted by Rule 26(e); such supplementation is proper only for the narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report." *Novartis Pharms. Corp. v. Actavis, Inc.*, 2013 WL 7045056, at *7 (D. Del. Dec. 23, 2013) (internal quotations omitted). TQ does not attempt to satisfy this standard, as it cannot. *Hioutakos v. SimplexGrinnell LP*, 2014 WL 1255197, at *3 (D.N.J. Mar. 26, 2014) (Rule 26(e) "should not be misused to circumvent deadlines or turn an expert report into a moving target."). All of the evidence TQ cites in the proposed supplemental reports was available to it at the time of the original reports.

Instead, TQ's motion asks the Court to permit it to rewrite Ms. Lawton's reports with new and previously undisclosed theories *after* SMO No. 21 found TQ's first attempt was improper. Specifically, the supplements advance two new theories. Neither are within the "limited scope" of Rule 26, and both would ignite further motion practice about untimely disclosure. Worse still, the supplements TQ attached to its Letter seek to add the same material SMO No. 22 struck. Ex. 1.

*First*, TQ's "supplements" introduce a brand new "alternative" calculation (D.I. 536 at 2) in case the Court later strikes its 20% metric at the *Daubert* stage. While the primary basis for calculating that 20% metric was struck because it relied on undisclosed DirecTV service fees, the 20% metric remains (*see* SMO No. 22, at 6) because TQ persuaded the Special Master that it still

has alternative support for it (*see* Ex. 2 at 1). TQ now wants a back-up plan. Specifically, for each Defendant, Ms. Lawton introduces a new "alternative calculation" "[i]n the event [she is] not permitted to use of [*sic*] the 20% apportionment metric." *See*, *e.g.*, D.I. 536, Ex. F ¶¶ 29, 1313. TQ's fear that the un-struck methodology undergirding the 20% figure will fail under future scrutiny does not justify the introduction of a new "alternative calculation" this late in the game, especially one based upon information that it had for years. *See Robocast, Inc. v. Apple Inc.*, 2014 WL 334199 (D. Del. Jan. 28, 2014) ("Supplementation of an expert report permits a party to correct inadvertent errors or omissions ... [it] does not give license to sandbag one's opponent…."); *MobileMedia Ideas, LLC v. Apple Inc.*, 2012 WL 6019305 (D. Del. Dec. 3, 2012) (precluding expert supplementation when expert aware of facts at time of original report).

  *Second*, TQ treats Ms. Lawton's "supplemental" reports as a game of Mad Libs whereby any stricken input can be replaced by another. But some of these new inputs were never disclosed as such in timely damages disclosures, and would be the subject of a new round of motion practice. Ms. Lawton's Reports originally set forth a benchmark royalty calculation as follows:

$$\textit{Incremental Whole Home DVR Premium} \times \frac{\textit{DirecTV's } \$1.00 \textit{ Royalty Payment to TiVo}}{\textit{DirecTV's } \$5.00 \textit{ TiVo DVR Fee}}$$

TQ admits that "for all cases," SMO No. 21 strikes the "denominator" (*i.e.*, DirecTV's $5.00 TiVo DVR Fee). (D.I. 536 at 3.) The "supplements" insert a new $4.98 DVR fee allegedly charged by EchoStar in 2006 in place of the stricken DirecTV $5 TiVo DVR fee. But TQ's Disclosures never suggested that ***EchoStar's*** $4.98 DVR fee from 2006 was relevant to calculating a royalty for TQ's patents, and TQ does not argue otherwise.[2] Thus, there is no prior disclosure of Ms. Lawton's new opinion. While TQ attempts to sidestep the issue with a cite to vague testimony from the 2006 *TiVo v. Echostar* trial transcript (D.I. 536 at 2 (citing Ex. D at 54)), it does not attempt to show where it previously disclosed the relevancy of that testimony in its Disclosures (because it did not). Indeed, all cites to the *TiVo v. EchoStar* transcript in TQ's Disclosures were presented only as bolstering TQ's position that the resulting 2011 settlement agreement (reached between TiVo and DISH after years of litigation) could be used as a comparable agreement. Ms. Lawton now admits that this settlement agreement (which was never produced in the non-DISH cases) is not comparable. This should end the analysis. But even TQ's other justification—that "the same and very similar formulas for apportioning the value of TQ Delta's patents" are used in both TQ's Disclosures and the supplements (D.I. 536 at 2 & n.4)—is without merit. TQ's Disclosures do not set forth "the same" or "very similar formulas" as the supplements. *Compare*, *e.g.*, D.I. 536, Ex. F ¶ 1239 (calculating a 20% "benchmark metric"), *with* Ex. K at p. 105 (disclosing a 55% figure). SMO No. 6 further required TQ to "identify any relevant recurring or subscription revenue to be incorporated in the damages analysis" (SMO No. 6 at 16), but TQ never disclosed EchoStar's DVR fees as relevant or that it would incorporate such fees into its damages analysis. Thus, TQ's proposed supplements would still put it in violation of SMO No. 6.  TQ's request for leave to supplement the Lawton reports should be denied.

---

[2] TQ argues that SMO No. 21 suggests that its "cite to the *TiVo v. EchoStar* trial transcript for details concerning that royalty rate was appropriate" (D.I. 536 at 2), implying that *any* information from that trial record is fair game. Not so. The holding was limited to "whether [TQ] disclosed the $1.00 royalty rate derived from the TiVo-DirecTV Development Agreement." SMO No. 21 at 15-17. Quoting from TQ's Disclosures, the Special Master held TQ "specifically identified the royalty rate used by the DirecTV-TiVo Development Agreement." *Id.* at 16. No such specific identification of a $4.98 EchoStar DVR fee exists in TQ's Disclosures.

Respectfully,

| | |
|---|---|
| MORRIS, NICHOLS, ARSHT & TUNNELL LLP | GREENBERG TRAURIG, LLP |

*/s/ Jennifer Ying*
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com

*Attorneys for Defendants Comcast Cable Communications LLC, CoxCom LLC, Cox Communications Inc., Time Warner Cable Inc., and Time Warner Cable Enterprises LLC*

*/s/ Benjamin J. Schladweiler*
Benjamin J. Schladweiler (#4601)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
(302) 661-7352
schladweilerb@gtlaw.com

*Attorneys for Defendant Verizon Services Corp.*

FISH & RICHARDSON P.C

*/s/ Nitika Gupta Fiorella*
Nitika Gupta Fiorella (#5898)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
(302) 652-5070
fiorella@fr.com

*Attorneys for Defendants DISH Network Corporation, DISH Network L.L.C., DISH DBS Corporation, and EchoStar Corporation*

October 4, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 4, 2022, upon the following in the manner indicated:

| | |
|---|---|
| Brian E. Farnan, Esquire<br>Michael J. Farnan, Esquire<br>FARNAN LLP<br>919 North Market Street, 12th Floor<br>Wilmington, DE  19801<br>*Attorneys for Plaintiff* | *BY ELECTRONIC MAIL* |
| Peter J. McAndrews, Esquire<br>Paul W. McAndrews, Esquire<br>Thomas J. Wimbiscus, Esquire<br>Scott P. McBride, Esquire<br>Rajendra A. Chiplunkar, Esquire<br>Ashley M. Ratycz, Esquire<br>David Z. Petty, Esquire<br>Andrew B. Karp, Esquire<br>Alan M. Montera, Esquire<br>MCANDREWS, HELD & MALLOY, LTD.<br>500 West Madison Street, 34th Floor<br>Chicago, IL  60661<br>*Attorneys for Plaintiff* | *BY ELECTRONIC MAIL* |
| Blake T. Dietrich, Esquire<br>JACKSON WALKER LLP<br>2323 Ross Avenue, Suite 600<br>Dallas, TX  75201<br>*Attorneys for Plaintiff* | *BY ELECTRONIC MAIL* |

*/s/ Jennifer Ying*

Jennifer Ying (#5550)